**Louciene WATSON, Plaintiff,**

v.

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., Defendants.**

**No. 83 C 5634.**

United States District Court, N.D. Illinois, E.D.

Sept. 9, 1983.

David R. Smith, Lisle, Ill., David G. Wilkins, Strauss, Sulzer, Shopiro & Wilkins, Chicago, Ill., for plaintiff.

Dan K. Webb, U.S. Atty. by James T. Hynes and Mary Anne Mason, Asst. U.S. Attys., Chicago, Ill., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BUA, District Judge.

The above-captioned matter, having come on to be heard on plaintiff's motion for preliminary injunction, and the Court having heard the testimony of the witnesses, having examined the exhibits introduced into evidence, having reviewed the parties' agreed Statement of Uncontested Facts, does hereby enter the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

1. This action was commenced by plaintiff, Louciene Watson, on August 15, 1983, to redress alleged violations of the Civil Service Reform Act, 5 U.S.C. §§ 2301, 2302, the Civil Rights Acts of 1964, 42 U.S.C. §§ 1985, 1986, the First and Fifth Amendments to the U.S. Constitution, and the Fair Housing Act, 42 U.S.C. § 3617.

2. Jurisdiction of the Court is invoked under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. §§ 3601 and 3617. Defendants have filed a motion to dismiss disputing jurisdiction.

3. All defendants are sued in their official capacities; in addition, plaintiff seeks monetary damages against defendants Tardy, Cummings and Ray in their individual capacities for claimed violations of his constitutional rights.

4. For approximately 10 years, plaintiff has held the position of Regional Director of Fair Housing and Equal Opportunity ("FH & EO") in the Chicago Regional Office of the Department of Housing and Urban Development, Region V.

5. By letter dated June 1, 1983, plaintiff was notified that he was to be transferred to the position of Regional Director, Debt Management Unit in Seattle, Washington effective July 10, 1983, at the same grade (GS–15) and pay.

6. On or about June 7, 1983, plaintiff was detailed out of his position as Regional Director of FH and EO and into the position of Special Assistant to the Regional Administrator, Region V, for the period of June 6, 1983 through July 9, 1983.

7. On June 13, 1983, plaintiff wrote a letter to defendant Tardy regarding his reassignment and requested certain information relative thereto. In that letter, plaintiff requested that his transfer be rescinded on the grounds of his lack of experience in the Debt Management area and the hardship to himself and his family resulting from the relocation to Seattle. Plaintiff also requested that, in addition to rescission of the transfer, he be reinstated to his former position as Regional Director of FH & EO.

8. Also on June 13, 1983, plaintiff filed a complaint with the Office of the Special Counsel ("OSC"), Merit Systems Protection Board, an independent body whose purpose is to investigate and recommend action on federal employees' claims of, *inter alia,* prohibited personnel practices under 5 U.S.C. §§ 2301, 2302. Plaintiff's handwritten complaint on a form supplied by the OSC, alleged that his transfer was effected in retaliation for testimony given by him against James Cummings, former Regional Administrator, Chicago Regional Office, in the course of an investigation conducted by the OSC.

9. Plaintiff and other employees of HUD were interviewed and gave testimony before an Administrative Law Judge of the Merit Systems Protection Board regarding the case of *Special Counsel v. HUD* which arose out of allegations by two HUD employees that Cummings, while Regional Administrator for Region V, improperly transferred them. Specifically, plaintiff testified that Cummings told him in a private conversation that he was going to "get" the two employees.

10. As a result of the foregoing proceeding before the MSPB, Cummings was transferred from Region V to Washington, D.C. as Director, Office of Voluntary Compliance.

11. In April of 1983, the ALJ rendered his decision favorable to Cummings and generally discounting the credibility of plaintiff's testimony.

12. Since he came forward with his testimony and since the issuance of the ALJ's decision in favor of defendant Cummings, plaintiff has heard persistent rumors from various employees of HUD that Cummings is "out to get" him and that he was to be transferred either to Washington, D.C. or Seattle, Washington.

13. On June 13, 1983, the Office of Special Counsel obtained a 15-day stay of the effective date of plaintiff's transfer in order to conduct an investigation of plaintiff's allegations regarding his transfer.

14. On June 23, 1983, plaintiff "amended" his complaint to the Special Counsel to allege that, in addition to the retaliatory nature of his transfer, HUD's action was also motivated, in part, by his race (black), and by certain officials' disagreement with his "aggressive" pursuit of the programs under his jurisdiction.

15. During the course of its investigation, the OSC interviewed, either in person, or by telephone, those persons designated by plaintiff as having knowledge of Cummings' intent to retaliate against him for his testimony in the MSPB proceeding.

16. After interviewing those people, and the HUD officials responsible for effecting plaintiff's transfer, the OSC concluded that plaintiff's transfer was not effected in retaliation for his testimony against Cummings and, consequently, that no prohibited personnel practice was involved in the transfer.

17. After the OSC determined that it would not seek another stay of plaintiff's transfer, plaintiff filed this action and moved for a preliminary injunction.

18. At the hearing on plaintiff's motion, plaintiff testified to some rumors he had heard regarding his impending transfer and Cummings' intent to "get" him. Apart from these rumors, however, plaintiff stated that he had no knowledge of any defend-

ants' connection with his transfer, either individually or collectively.

19. Plaintiff also offered the testimony of two HUD employees regarding conversations they had with defendant Cummings in which plaintiff and the role he played in Cummings' transfer were discussed.

20. Plaintiff offered no evidence regarding any contact defendant Cummings had with any of the other defendants with whom he is alleged to have conspired to effect plaintiff's transfer.

21. Plaintiff also offered no evidence of any contact between defendant Cummings and Gordon Walker, Deputy Under Secretary for Field Coordination, the HUD official primarily responsible for the decision to transfer plaintiff.

22. Defendants offered the testimony of Gordon Walker. Walker testified that he has never met Cummings nor spoken to him on the telephone. Walker has never had any communication of any nature with Cummings regarding plaintiff's transfer.

23. Walker decided to transfer plaintiff because Alfred Moran, Regional Administrator, Region V, had expressed some dissatisfaction with plaintiff. Plaintiff's transfer was effected as part of a three-way move whereby plaintiff was transferred to Seattle, a Seattle employee was transferred to Fort Worth, Texas, and a Fort Worth employee was transferred to Chicago. The Regional Administrators for all three regions had made known to Walker their problems with these employees and Walker saw this as an opportunity to solve all three problems.

24. Walker further testified that plaintiff's lack of experience in the technical aspects of debt collection had no impact upon his decision to transfer plaintiff to the newly created Debt Management Unit in Seattle. In Walker's opinion, a managerial employee at the GS–15 level is qualified to manage any aspect of HUD operations. Effective management does not require a working knowledge of the technical area supervised.

25. To the extent that any of the foregoing findings of fact are deemed to be conclusions of law, they are hereby adopted as conclusions of law.

Of the above and foregoing findings of fact, the Court makes the following conclusions of law:

■ 1. As a general rule, a preliminary injunction will not lie to restrain a federal agency from taking a personnel action against an employee. *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974).

■ 2. Assuming for the sake of argument that jurisdiction does exist, plaintiff has nonetheless failed to satisfy the traditional prerequisites to preliminary injunctive relief, particularly, a likelihood of success on the merits and irreparable injury. *Machlett Laboratories, Inc. v. Techny Industries,* 665 F.2d 795, 796–97 (7th Cir.1981).

3. The materials produced by the OSC in response to a Freedom of Information Act request filed by plaintiff reveal that the OSC conducted a thorough and impartial investigation into the circumstances of plaintiff's transfer. That investigation revealed that the HUD officials responsible for effecting plaintiff's transfer had no contact with and were in no manner influenced by defendant Cummings in their decision. Plaintiff's testimony at the preliminary injunction hearing added nothing of substance to his claims. Plaintiff offered no evidence at all to support his claims that his transfer was racially motivated or effected in an attempt to discourage his aggressive pursuit of the programs under his jurisdiction. Therefore, plaintiff has failed to establish a likelihood of success on the merits.

4. In addition, the injury attendant to plaintiff's involuntary transfer, while not insubstantial, is insufficient to override the "factors cutting against the general availability of preliminary injunctions in government personnel cases." *Sampson v. Murray,* 415 U.S. 61, 84, 94 S.Ct. 937, 950, 39 L.Ed.2d 166 (1974). Specifically, the inconvenience and expense that will necessarily

be incurred by plaintiff in relocating to Seattle are insufficient to satisfy plaintiff's burden of proving irreparable injury. *Gilley v. United States,* 649 F.2d 449 (6th Cir.1981); *Stromfeld v. Smith,* 557 F.Supp. 995 (S.D.N.Y.1983).

5. Moreover, in the event that plaintiff refuses to report for Seattle and, as a result, is terminated by HUD, he will at that time have available to him all the appeal rights provided for in cases of adverse personnel actions.

6. Because plaintiff cannot satisfy the prerequisites to preliminary injunctive relief, his motion must be denied.

7. To the extent that any of the foregoing conclusions of law are deemed to be findings of fact, they are hereby adopted as findings of fact.

Accordingly, plaintiff's motion for preliminary injunction is denied.

IT IS SO ORDERED.