**Jerry Alan GILLEY, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Acting by and through Norman A. Carlson, Director, Federal Prison Systems, Department of Justice, Defendant-Appellant.**

**No. 80–1072.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 11, 1981.

Decided May 27, 1981.

Rehearing and Rehearing En Banc Denied Aug. 25, 1981.

W. J. Michael Cody, U. S. Atty., Joe A. Dycus, Asst. U. S. Atty., Memphis, Tenn., William Kanter and Howard S. Scher, Ap-

pellate Staff, Civ. Div., Depart. of Justice, Washington, D. C., for defendant-appellant.

Mitchell J. Notis, Washington, D. C., for plaintiff-appellee.

Before LIVELY and KEITH, Circuit Judges; and BOYLE,* District Judge.

LIVELY, Circuit Judge.

In this case the government appeals from an order granting a preliminary injunction which prohibits the transfer of a tenured federal employee to a new duty station.

## I.

The plaintiff was a Correctional Supervisor at the Federal Correctional Institution (FCI) in Memphis, Tennessee with more than eleven years of service with the Bureau of Prisons. The plaintiff was involved in an incident in which he went to the aid of another staff member who was being assaulted by an inmate. Following an investigation the warden of FCI Memphis advised the plaintiff that he proposed disciplinary action because the plaintiff had used excessive force in subduing the inmate and had failed to preserve evidence. Finding that plaintiff's credibility and effectiveness as a supervisor had been destroyed, the warden concluded that demotion and reassignment would be warranted.

Though he was advised in writing of his right to respond, the plaintiff did not do so. Thereafter the recommendation of the warden was accepted by the Bureau and plaintiff was demoted and reassigned to the United States Penitentiary at Leavenworth, Kansas. The plaintiff filed an appeal with the Merit Systems Protection Board (MSPB) pursuant to 5 U.S.C. § 7701 et seq. Plaintiff's attorney sought a stay of the reassignment order from the Director of the Bureau of Prisons and from the Special Counsel to the MSPB. When both of these requests were denied the plaintiff sought, and was granted a temporary restraining order in the district court. This order en-

---

* The Honorable Patricia Boyle, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

joined the involuntary transfer of Gilley to Leavenworth.

The plaintiff then filed a complaint seeking preliminary and permanent injunctions on the same grounds relied upon for the temporary restraining order. The defendant moved for dissolution of the restraining order and the district court ordered a hearing on this motion and the plaintiff's application for a preliminary injunction. At the conclusion of the hearing the district court ruled from the bench, denying the motion to dissolve the restraining order and granting a preliminary injunction. An order was then entered which enjoined the defendant from requiring the plaintiff "to remove himself to a duty station outside Memphis, Tennessee, while his present appeal is pending before the Merit Systems Protection Board" and from requiring plaintiff to use accumulated leave or assume a leave status without pay while the injunction remained in effect. The government appealed from this order and from a subsequent order of the district court denying its motion to dissolve the preliminary injunction.

## II.

In support of his claim of irreparable harm the plaintiff testified that his wife needed to continue treatment with a Memphis physician who had recently delivered their child by Caesarian section. He testified that he had purchased a home in Memphis with an 8½ per cent mortgage and that the interest rate on any home he might purchase in Leavenworth would be higher. Gilley also stated that he believed it was necessary for him to remain an employee of the Bureau in order to pursue his appeal. He emphasized the necessity for close contact with his Memphis attorney during the course of his appeal to the MSPB and the unreimbursable expenses which would be involved in maintaining this contact if he should be transferred. Though he stated he would probably resign and live in Memphis if his appeal were unsuccessful, the plaintiff testified that if he moved to Leavenworth and later resigned he would suffer financial losses consisting of the cost of moving both

ways and of maintaining two homes during the pendency of his appeal. His basic claim was that he was entitled to a hearing on his appeal to the MSPB before he was required to move to any other federal institution. On cross-examination he agreed that transfers are a regular part of life for Bureau employees, but maintained they are usually for promotion. He also conceded that his wife had been released for travel by the time of the hearing, but testified it would be desirable for her to be attended by the same Memphis physician if they should decide to have another child.

The district court found that it was necessary for the plaintiff to remain an employee of the Bureau in order to perfect his appeal and that if he is transferred he will be at a "serious disadvantage" in preparing for the appeal. The court found that the entire action of the Bureau, including the reassignment, was punitive since transfers seldom accompany demotions. No irreparable injury was found in the disruption of the plaintiff's family life and community ties, in the separation of Mrs. Gilley from her physician or in the loss of a favorable mortgage interest rate. However, the court found irreparable injury in the effect the punitive transfer would have of "depriving" the plaintiff of his right to perfect an appeal. "So, I find that if he was transferred it would be a violation of his due process rights." The district court also found that the threatened injury to the plaintiff outweighed that to the defendant and that the public interest would not be disserved by issuing an injunction. It found that Gilley was likely to succeed on the merits. The court specifically rejected the defendant's argument that an injunction was improper because the plaintiff had failed to exhaust his administrative remedies.

## III.

■ On appeal the government contends that the district court was without authority to enjoin plaintiff's transfer because the Civil Service Reform Act of 1978, 5 U.S.C. § 1101 et seq. (1976 ed., Supp. III), contains

the exclusive procedure for obtaining judicial review of federal personnel actions. The statutory scheme of the Act provides for judicial review of final personnel actions in the Court of Claims or the appropriate court of appeals. 5 U.S.C. § 7703. This judicial review, however, follows the completion of administrative procedures, culminating in a review of the action by the MSPB. *Id.* The Act also contains a provision by which the Special Counsel to the MSPB may seek a stay of any personnel action for 15 days upon a determination of reasonable grounds to believe the action was taken as a result of "a prohibited personnel practice." 5 U.S.C. § 1208. The government argues that this grant of authority to the Special Counsel provides the only means of maintaining the status quo pending appeal from a federal personnel action, and that its effect is to deprive district courts of any power to intervene. We disagree.

■ Though the Reform Act of 1978 represented a comprehensive overhaul of the federal civil service system, we find no indication within the statutory language, or the legislative history, of an intent to deprive district courts of their traditional equitable powers. The plaintiff did not seek review of the refusal of the Special Counsel to seek a temporary stay on his behalf. The authority of the Special Counsel in this regard is purely discretionary and there is no statutory provision for review of the exercise of this discretion. What the plaintiff sought and received from the district court was traditional equitable relief in the form of an injunction to prevent immediate irreparable injury which he claimed he would suffer if the transfer order were carried out prior to completion of administrative review of the action of the Bureau. This was an entirely different degree of judicial protection than that provided by the Act. The two avenues of relief are not mutually exclusive.

■ In the absence of a clear showing of congressional intent to do so, courts will not infer that the enactment of a particular statute containing provisions for judicial review has the effect of withdrawing from the courts their traditional equitable powers. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). This rule is related to the more general "doctrine disfavoring repeals by implication . . . ." *TVA v. Hill,* 437 U.S. 153, 190, 98 S.Ct. 2279, 2299, 57 L.Ed.2d 117 (1978); *Morton v. Mancari,* 417 U.S. 535, 549, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974). We find no support for the argument that Congress intended to deprive district courts of their traditional power to prevent irreparable harm by providing for judicial review in another forum of final personnel actions and for limited temporary stays of administrative orders at the behest of an officer of the executive branch. Such a limitation on a long recognized power of the district courts could be found only in explicit language not present in the Reform Act.

■ Though the district court granted a preliminary injunction, it referred to the four criteria required for issuance of a stay. *See Virginia Petroleum Jobbers Association v. Federal Power Commission,* 259 F.2d 921, 925 (D.C. Cir. 1958). Such stays are ordinarily granted by a court which has jurisdiction to review the orders of the court or administrative agency whose actions it is asked to stay; that is, such stays are granted by a reviewing court in order to maintain the status quo pending its own review of the actions in question. Rule 8, Fed.R. App.P.; *Scripps-Howard Radio v. FCC,* 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942); *Virginia Petroleum Jobbers Association, supra.* Since the district court has no jurisdiction to review final personnel orders under the Reform Act, it was not acting in aid of its own appellate jurisdiction when it granted the injunction in the present case. Rather, we believe, it was acting in the traditional role of an equity court and that its jurisdiction was founded on 28 U.S.C. § 1331 (1976), the "federal question" provision. According to the complaint, the plaintiff's action is one which "arises under the

Constitution, [or] laws .... of the United States ...." *Id.*[1]

## IV.

■ The government next argues that if the Reform Act did not withdraw authority to do so, nevertheless the district court erred as a matter of law in issuing a temporary injunction in this case. The fundamental requirements for an injunction in the federal courts are a showing that one party will suffer irreparable harm unless the other party is restrained from taking a threatened action and that there is no adequate remedy at law. *Beacon Theatres v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959). The Supreme Court has established standards for judging claims of irreparable harm in federal personnel cases which are more stringent than those applicable to other classes of cases. In *Sampson v. Murray*, 415 U.S. 61, 91, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974), the Supreme Court found that the showing by a probationary federal employee seeking to enjoin her discharge fell "far short" of the type of irreparable injury required to justify an injunction. Neither financial losses nor damage to reputation was found to constitute irreparable harm sufficient to support a preliminary injunction. At least when the plaintiff is a probationary employee, irreparable injury sufficient to justify an injunction will be found only in "extraordinary cases." 415 U.S. at 92 n.68, 94 S.Ct. at 953 n.68.

The plaintiff argues strenuously that *Sampson* applies only to probationary employees, and that tenured employees such as he need only meet the less stringent "traditional" standards of irreparable injury. It is true that some of the language in *Sampson* applies only to situations involving probationary employees, who have fewer procedural rights than permanent employees. 415 U.S. at 80–82, 94 S.Ct. at 948–49. Nevertheless, the Supreme Court was referring to all federal employee cases, not just those of probationary employees, when it wrote:

The District Court, exercising its equitable powers, is bound to give serious weight to the obviously disruptive effect which the grant of the temporary relief awarded here was likely to have on the administrative process. When we couple with this consideration the historical denial of all equitable relief by the federal courts in cases such as *White v. Berry*, 171 U.S. 366, [18 S.Ct. 917, 43 L.Ed. 199] (1898), the well-established rule that the Government has traditionally been granted the widest latitude in the "dispatch of its own internal affairs," *Cafeteria Workers v. McElroy*, 367 U.S. 886, 896, [81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230] (1961), and the traditional unwillingness of courts of equity to enforce contracts for personal service either at the behest of the employer or of the employee, 5A A. Corbin, Contracts § 1204 (1964), we think that the Court of Appeals was quite wrong in routinely applying to this case the traditional standards governing more orthodox "stays." See *Virginia Petroleum Jobbers Assn. v. FPC*, 104 U.S.App. D.C. 106, 259 F.2d 921 (1958). Although we do not hold that Congress has wholly foreclosed the granting of preliminary injunctive relief in such cases, we do believe that respondent at the very least must make a showing of irreparable injury sufficient in kind and degree to override these factors cutting against the general availability of preliminary injunctions in Government personnel cases.

415 U.S. at 83–84, 94 S.Ct. at 949–50 (footnote omitted).

■ Our conclusion that *Sampson* states rules applicable to all cases where federal employees seek district court injunctive relief prior to completion of their administrative appeals is fortified by holdings of other courts. In *Morgan v. Fletcher*, 518 F.2d 236 (5th Cir. 1975), the court of appeals concluded that the district court had erroneously found irreparable injury consisting of a loss of salary which would probably lead to foreclosure of a mortgage on the plaintiff's

---

1. The plaintiff alleged several constitutional violations in his complaint.

home and the loss of medical insurance which would be injurious given the plaintiff's "overwrought condition." In reaching this conclusion the court of appeals relied on *Sampson*, along with other decisions, and stated that the distinction between tenured and probationary employees relates to their different procedural rights, not to whether there has been irreparable injury. 518 F.2d at 239 n.3. In *Diliberti v. Brown*, 583 F.2d 950, 951 (7th Cir. 1978), the court held that the case of a permanent employee seeking injunctive relief prior to completion of his administrative appeal was controlled by *Sampson. See also Wallace v. Lynn*, 507 F.2d 1186, 1187 n.3. (D.C. Cir. 1974); *Phillips v. Klassen*, 502 F.2d 362, 368 (D.C. Cir.), *cert. denied*, 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974). Gilley cites a number of district court decisions in support of his argument that *Sampson* does not apply to tenured federal employees. These cases are distinguishable, however, in that there was either a denial of a statutory right to a hearing or there was no possibility of recovering back pay.[2]

## V.

We conclude that the district court failed to apply correct legal standards to Gilley's claim for injunctive relief. Its finding of a due process violation appears to be based on a determination that Gilley's reassignment to Leavenworth impermissibly burdened his right to an effective administrative appeal. We find no basis for this conclusion. The plaintiff was entitled to no greater rights than a discharged federal employee. Yet it is clearly established that a federal employee is not entitled to a hearing prior to discharge. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). If an employee may be required to suffer the ultimate sanction of discharge prior to hearing, it follows that he has no right to postpone the effective date of a less serious punishment until after his administrative appeal is concluded.

If the plaintiff had disobeyed the transfer order and failed to report to Leavenworth on the specified date, presumably he would have been discharged. He would then have had the right to appeal his discharge, and if successful, would have been fully reimbursed for lost wages and benefits under the Back Pay Act, 5 U.S.C. § 5596 (1976). *Sampson, supra*, 415 U.S. at 75, 94 S.Ct. at 945. The injury which he claimed as a result of the transfer order consisted of the difficulty of working with his attorney on his appeal to the MSPB and the personal inconveniences and expenses involved in being temporarily separated from his family and in breaking community ties. The district court declined to find that the claims of disruption of family life and related matters constituted irreparable harm. This was clearly correct. However, we find no basis for the holding that there was a "deprivation" of Gilley's right to perfect his appeal. True, it would be more difficult if he were in Leavenworth, yet it would in no sense be impossible. Gilley had sufficient accumulated leave to provide ample opportunities to confer with his attorney and to attend any required hearing. In fact, he could have sought transfer of his appeal to the field office with jurisdiction over claims originating in Kansas. 5 C.F.R. § 1201.4(e). The investigation and any hearing could then have been conducted as if the action complained of had occurred at Leavenworth rather than Memphis.

Careful examination of the entire record on appeal convinces us that the district court failed to consider "the well established rule that the Government has traditionally been granted the widest latitude" in such matters and erred "in routinely applying to this case the traditional standards governing more orthodox 'stays.'" *Sampson, supra*, 415 U.S. at 83–84, 94 S.Ct. at 949–50 (citation and footnote omitted). The consequences of the transfer order which Gilley sought to escape were such as

---

**2.** *E. g., Keyer v. Civil Service Commission of City of New York*, 397 F.Supp. 1362 (E.D.N.Y. 1975); *American Fed. of Gov. Employees, Local 1858 v. Callaway*, 398 F.Supp. 176 (N.D. Ala.1975), *dismissed sub nom. American Fed. of Gov. Employees v. Hoffman*, 427 F.Supp. 1048 (N.D.Ala.1976).

to evoke sympathy for his predicament, but they did not constitute irreparable injury.

The preliminary injunction is dissolved and the case is remanded to the district court with directions to dismiss the complaint.