**Stuart STROMFELD, Plaintiff,**

v.

**William F. SMITH, et al., Defendants.**

**No. 82 Civ. 0377 (KTD).**

United States District Court,
S.D. New York.

Feb. 3, 1983.

Schulman & Laifer, Brooklyn, N.Y., for plaintiff; Barry Schulman, Brooklyn, N.Y., of counsel.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for defendants; J.D. Pope, Asst. U.S. Atty., New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

On October 1, 1982, Stuart Stromfeld, an agent with the Drug Enforcement Administration ("DEA") moved by order to show cause for a preliminary injunction prohibiting his transfer from the DEA Atlantic City, New Jersey Office to the DEA Miami, Florida Office. A hearing was held on November 5, 1982. I reserved my decision with the understanding that Stromfeld would remain at his temporary assignment to the DEA Office in Philadelphia, Pennsylvania until I ruled on this request for preliminary relief. For the reasons that follow, Stromfeld's motion for a preliminary injunction must be denied.

### I.

Stuart Stromfeld joined federal drug enforcement as an agent in 1967 at the General Service ("GS") Level 5.[1] He was assigned to the New York City area and completed his required schooling and training in both Washington, D.C. and New York. Stromfeld was promoted regularly during his early years with DEA and by 1973 he had been elevated to a GS–13. Also in 1973, Mr. John W. Fallon, one of the prime movers behind this lawsuit, was made head of the DEA New York Regional Office. Stromfeld remained in New York until 1974 when he was sent to California for one year of temporary duty ("TDY"). Two months after Stromfeld's return to New York City in 1975, he was reassigned to the Long Island DEA Office. This office requested that all employees live close by. To

1. In 1967, Stromfeld joined the Federal Bureau of Narcotics. This bureau later became the DEA.

comply with this request and to shorten his commute Stromfeld moved his residence from Queens to Manhasset, Long Island. Carl Jackson succeeded John Fallon as head of the New York Region around this time, and Fallon was promoted to head of the Northeast Region.

From 1974 to 1978, Stromfeld made repeated requests for promotions. In further pursuit of promotion, the plaintiff met in 1977 with Frank V. Monastero, the DEA Assistant Administrator of Operations, and two other DEA employees to express his discontent over the promotion denials. In May of 1978, Stromfeld was chosen to head up the DEA Eastern District Conspiracy Unit. This new position, though more prestigious, did not carry with it a grade or salary increase. In July of 1978, Stromfeld filed the first of three complaints with the Equal Employment Opportunity Commission ("EEOC") alleging that his stagnation at DEA was a result of religious discrimination. Mr. Stromfeld is Jewish.

In 1979, Stromfeld was reassigned at his request, and promoted to GS–14 as Resident Agent-in-Charge of the DEA Atlantic City, New Jersey Office. Stromfeld told DEA that this promotion remedied his EEOC complaint. It was at the Atlantic City Office, however, that Stromfeld's problems with DEA administration peaked. Plaintiff filed his final EEOC complaint on August 5, 1980 against Michael Tobin, the Special Agent in charge of the Newark, New Jersey Office, alleging retaliation against Stromfeld for his earlier EEOC complaints. Soon after this filing, the following charges were levelled against Stromfeld: (1) transporting personal property in his DEA car; (2) transporting non-DEA personnel in his DEA car; (3) exercise of poor judgment; (4) failure to process properly seized contraband and property; and, (5) double vouchering. As a result of these charges, Stromfeld was demoted and reassigned to Miami, Florida. This decision was appealed to the New York Regional Office of the Merit Systems Protection Board ("MSPB"). Mitchell Kastner, the Presiding Official of the MSPB, ruled on February 8, 1982, that Stromfeld's demotion was in retaliation for

his EEOC activities and therefore, reversed the demotion. Plaintiff's Exhibit A.

The MSPB decision is a damning indictment of John Fallon, Michael Tobin and the internal operations of the DEA. Presiding Officer Kastner's disturbing account of the workings of the DEA portrays a drug enforcement agency more concerned with promoting and protecting the careers of the select few than with its job of drug enforcement. Kastner describes Fallon's determined and relentless efforts to undermine the disfavored agent Stromfeld without regard for the plaintiff's record in criminal cases and his reputation with liaison authorities. The allegedly egregious errors committed by the plaintiff, which were serious enough to require demotion and transfer, were selectively ignored when committed by preferred employees. For example, the poor judgment of DEA Agent Jerry Whitmore, as described by Kastner, was not reprimanded. Kastner's description of the DEA's response to unacceptable conduct by a member of the Fallon-Tobin camp, is a glaring example of the dangers that result when drug enforcement takes a second seat to personal controversies and selective prosecution:

> Jerry Whitmore, a DEA agent at Kennedy Airport, is reputed to be an informant of Tobin and Fallon. Unbeknownst to the drug smugglers, DEA agents at Kennedy Airport had confiscated 600 pounds of hashish, worth about $1,000,000, and were laying in wait for the smugglers to return to pick up their stash. But during Whitmore's watch, the smugglers entered the warehouse and snatched the hashish out from under DEA. For that oversight, Tobin issued Whitmore a letter of admonishment which did not even go in his personnel file. Fallon, who learned of the theft, apparently also concurred that Whitmore's negligence was venial since in contrast to the appellant's [Stromfeld's] situation Fallon did not seek to impose a more severe punishment. But what makes the Whitmore incident truly Kafkaesque is that within 90 days of the theft—which received considerable media

attention—Whitmore received a Sustained Superior Performance Award and an outstanding evaluation.

Plaintiff's Exhibit A at 20.

Out of all the charges made against the plaintiff, the MSPB found that the DEA could only substantiate by a preponderance of the evidence Stromfeld's poor judgment in failing to process a heroin sample promptly and his failure to properly segregate seized cassette tapes from his own tapes. Kastner's alarming condemnation of Fallon's management of the Northeast region in general and the Stromfeld case in particular is not yet a final decision. DEA's appeal of this decision is now pending before the full MSPB.[2]

The MSPB decision did not end Stromfeld's battle with the DEA. Stromfeld was found unfit for duty from December 18, 1980, when he fell and hurt his back. This condition continued until the November 1982 hearing before me when plaintiff represented that he was fit to return to work. In August 1982, after Stromfeld informed DEA that he would soon be returning to work, the plaintiff met with Frank Monastero to discuss his assignment location. During this meeting Stromfeld cited the favorable MSPB decision and reaffirmed his desire to remain in the Atlantic City Office. Nevertheless, based on the charges against Stromfeld and his apparent inability to work effectively with office employees and liaison authorities, Monastero ruled out continued assignment to Atlantic City. Monastero then suggested that Stromfeld consider reassignment to Philadelphia. This transfer would allow Stromfeld to maintain his residence in Atlantic City and commute to work. Stromfeld responded that even though he was fit for duty, the commute from Atlantic City to Philadelphia would be onerous and detrimental to his health. This implicit rejection of the informal offer of Philadelphia as a possible relocation site led Monastero to explore other options. His decision to reassign Stromfeld to the DEA Miami Office was in direct response to DEA needs. Sixty-one TDY DEA personnel are presently assigned to Miami along with over one hundred permanent employees.

The decision to transfer Stromfeld to Miami constitutes the basis of his request for preliminary relief.[3]

II.

A preliminary injunction will be granted only if Stromfeld shows,

(a) that [he] would otherwise suffer irreparable injury and (b) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly in [his] favor.

*Doe v. New York University,* 666 F.2d 761, 773 (2d Cir.1981). A *sine qua non* for the grant of preliminary relief is irreparable harm. *United States Postal Service v. Brennan,* 579 F.2d 188, 191 (2d Cir.1978). A harm that can be remedied monetarily does not qualify as irreparable. *Patterson v. United Federation of Teachers,* 480 F.Supp. 550, 553 (S.D.N.Y.1979). *See also Buffalo Courier-Express v. Buffalo Evening News,* 601 F.2d 48, 58 (2d Cir.1979). A federal employee challenging the action of a federal agency, however, must establish a higher degree of harm. The moving party must show that "extraordinary" harm will result if interim relief is denied. *Sampson v. Murray,* 415 U.S. 61, 92 n. 68, 94 S.Ct. 937, 953 n. 68, 39 L.Ed.2d 166 (1974);[4] *Gilley v.*

2. In January 1982, before MSPB rendered its decision, Stromfeld filed the instant complaint alleging religious discrimination in violation of Title VII, 42 U.S.C. § 2000e–16.

3. The Order to Show Cause states that the recent transfer to Miami includes a demotion. There was no other mention of this demotion in the papers of the hearing. Even if the demotion is in effect, this does not disturb my decision to deny preliminary relief.

4. In *Sampson,* the Supreme Court reversed the district court's order of temporary relief enjoining the General Services Administration's dismissal of a probationary employee. Absent any showing of the higher standard of irreparable harm required in federal employee cases, the Court found injunctive relief was inappropriate. This standard has been applied subse-

*United States,* 649 F.2d 449, 454 (6th Cir. 1981). This stringent standard accommodates the judiciary's well-founded reluctance to interfere with the government's administrative personnel decisions. *Cf. Sampson v. Murray,* 415 U.S. at 83, 94 S.Ct. at 949. ("The government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs', *Cafeteria Workers v. McElroy,* 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961).") This latitude does not eviscerate my obligation to enjoin government action that violates applicable statutes,[5] *Grebosz v. United Civil Service Commission,* 472 F.Supp. 1081, 1087 (S.D.N.Y.1979), but it does require federal employees to demonstrate irreparable harm that outweighs the government interest in unfettered internal regulation. *Sampson v. Murray,* 415 U.S. at 83–84, 94 S.Ct. at 949–50.

▋ Despite the obvious hardships that will result to Stromfeld and his family from the transfer, plaintiff has failed to "make a showing of irreparable injury sufficient in kind and degree to override these factors cutting against the general availability of preliminary injunctions in Government personnel cases." *Id.* Both Stromfeld, and his wife Rita, testified that the transfer to Miami will result in financial, emotional, and physical repercussions. Other families in the Stromfeld's residential development have encountered difficulty selling their homes and the Stromfelds anticipate that the prevailing high interest rates would similarly effect their ability to sell their house at a reasonable price. The financial loss that would result from a forced move to Miami, however, is compensable and does not warrant interim relief.

The emotional and physical harm that Stromfeld and his family will suffer if he is transferred to Miami is not disputed. Mrs. Stromfeld has suffered four miscarriages since the filing of her husband's first EEOC

complaint. Obviously, psychological as well as physical scars accompany her misfortune. Additionally, the Stromfeld's son Adam, who is 13 years old, has had considerable trouble adjusting to their move to Atlantic City. The combination of the miscarriages and the moves has caused considerable distress to the Stromfeld family. As Mrs. Stromfeld herself stated, the past two years have been "a living hell."

I am sympathetic to the Stromfeld's plight. This sympathy, however, does not justify a finding of irreparable harm sufficient to warrant an injunction. It is relevant that Stromfeld requested the move to Atlantic City and was not adverse to moving from New York City to Long Island for a job promotion.[6] Rita and Stuart Stromfeld's present dissatisfaction with the DEA's power to reassign its agents is tantamount to dissatisfaction with the plaintiff's career choice.

The apparent harshness of this finding is supported by both *Gilley* and *Morgan v. Fletcher,* 518 F.2d 236 (5th Cir.1975). In *Gilley,* a federal Correctional Supervisor was demoted and reassigned from the Memphis, Tennessee Federal Correctional Institution to the United States Penitentiary at Leavenworth, Kansas. The district court found that the transfer would irreparably harm his right to perfect his MSPB appeal and issued a preliminary injunction enjoining the plaintiff's transfer until a final ruling by the MSPB. The Sixth Circuit dissolved the injunction. The disruption of the plaintiff's family and community life, personal inconveniences, separation from the plaintiff's lawyer and consequential financial losses did not justify the issuance of an injunction. As the court aptly stated: "The consequences of the transfer order which Gilley sought to escape were such as to evoke sympathy for his predicament, but they did not constitute irreparable injury." 649 F.2d at 456.

---

quently to cases involving non-probationary employees. *Gilley v. United States,* 649 F.2d 449, 454 (6th Cir.1981).

**5.** Stromfeld's complaint alleges a violation of Title VII, 42 U.S.C. § 2000e–16.

**6.** It is a condition of his employment with DEA that Stromfeld be amenable to reassignment in order for the agency to serve effectively the changing geographical needs in drug law enforcement.

In *Morgan,* the district court's entry of an injunction preventing the dismissal of a National Aeronautics and Space Administration employee pending a full evidentiary hearing was reversed on appeal. This federal employee had argued that the lost salary leading to foreclosure of her family's home and the lost medical insurance needed to treat her "overwrought condition" constituted irreparable harm. In accord with *Sampson,* the Fifth Circuit disagreed. The plaintiff's injury was not sufficiently "extraordinary" to warrant injunctive relief.

Stuart Stromfeld has failed to demonstrate that the harm he will suffer if his transfer is enforced is "extraordinary." This is not to suggest that Stromfeld will not prevail on the merits of his case. The DEA should be deeply concerned by both the MSPB decision and Stromfeld's allegations of religious discrimination and retaliation. At this time, however, the lack of irreparable harm requires that plaintiff's request for a preliminary injunction be denied.

SO ORDERED.