**Charles R. RYON, Sr.,
Plaintiff–Appellant,**

v.

**Colonel Peter J. O'NEILL, et al.,
Defendants–Appellees.**

No. 89–5461.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 1, 1989.

Decided Jan. 24, 1990.

Scott D. Spiegel (argued), Lynch, Cox, Gilman & Mahan, Louisville, Ky., for plaintiff-appellant.

Joseph M. Whittle, U.S. Atty., James H. Barr, Asst. U.S. Atty., Office of the U.S. Atty., Louisville, Ky., William Kanter, Dept. of Justice Appellate Staff—Civ. Div., Gail D. Reinhart, Asst. Gen. Counsel, Defense Mapping Agency, and Deborah Ruth Kant (argued), U.S. Dept. of Justice, Civ. Div. Appellate Staff, Washington, D.C., for defendants-appellees.

Before MILBURN and GUY, Circuit Judges, and LIVELY, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

The plaintiff, Charles R. Ryon, appeals the district court's dismissal for lack of jurisdiction of his marital status discrimination claim against the Defense Mapping Agency. Plaintiff contends that jurisdiction was properly asserted on the basis of an implied right of action under the Civil Service Reform Act (CSRA or Act), 5 U.S.C. § 2302(b) (1978), and accompanying regulations, 5 C.F.R. § 720.901(a) (1979), under the Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq.* (1966), and under the Mandamus Act, 28 U.S.C. § 1361 (1962). Because we find that the CSRA not only contains no implied right of action, but also evinces Congress' intention to preclude direct appeal to the federal courts under each of the statutes suggested by the plaintiff, we agree that the district court was without jurisdiction to hear plaintiff's claim.

I.

In August 1985, Charles Ryon began a two-year tour of duty in Seoul, Korea, as a senior technical representative for the Defense Mapping Agency (DMA), an arm of the Department of Defense. Ryon's family

accompanied him to Seoul but returned to the United States before his tour expired. In February of 1987, the DMA offered to extend Ryon's position in Korea one full year, to which Ryon responded by requesting a three-year extension. The DMA subsequently revoked its one-year offer and assigned the plaintiff to a position in the United States. In a letter dated August 22, 1987, the DMA's chief of staff explained to Ryon that, because he was no longer accompanied by his family, he was limited to a one-year extension of his tour, and that the offer of a one-year extension had been revoked due to Ryon's ineligibility for home leave and the need to stagger tours in order to provide an overlap of experienced personnel in Seoul. Ryon appealed the DMA's decision to the Merit System Protection Board (MSPB) alleging that the reassignment constituted discrimination on the basis of marital status, a "prohibited personnel practice" under the CSRA, 5 U.S.C. § 2302(b)(1)(E). The MSPB subsequently dismissed the plaintiff's appeal asserting that it lacked jurisdiction to hear complaints of prohibited personnel practices brought by an aggrieved employee except upon referral by the Office of the Special Counsel (OSC). Plaintiff's complaint was forwarded to the OSC which apparently elected neither to pursue Ryon's claim with the DMA nor to recommend any further action by the MSPB.

On July 16, 1987, plaintiff brought suit in the United States District Court for the Western District of Kentucky alleging that the DMA's assignment decision constituted discrimination on the basis of marital status in contravention of 5 U.S.C. § 2302(b)(1)(E) and 5 C.F.R. § 720.901(a), and requested the court to issue an injunction reinstating him to his position in Korea. On April 8, 1989, the district court entered an order dismissing Ryon's claim for lack of jurisdiction.

## II.

We begin our analysis of plaintiff's appeal by noting that his arguments for jurisdiction under the CSRA and the APA were explicitly rejected by the District of Columbia Circuit in two cases whose facts bear a striking resemblance to those now before us. In *Cutts v. Fowler*, 692 F.2d 138 (D.C. Cir.1982), the plaintiff brought an action in federal district court alleging, *inter alia,* that a Federal Communications Commission decision to transfer her to another office without reduction in pay or grade constituted discrimination on the basis of marital status, a prohibited personnel practice under 5 U.S.C. § 2302(b)(1)(E). The court held that, in enacting the CSRA, "Congress had not intended to create a private statutory right of action" in the federal courts to enforce the restrictions on agency action contained in section 2302(b). 692 F.2d at 140. The next year, the District of Columbia Circuit was once again presented with a claim against a federal agency for unlawful reassignment. In *Carducci v. Regan*, 714 F.2d 171 (D.C.Cir. 1983), the plaintiff claimed, *inter alia,* that his reassignment by the Customs Service was "arbitrary and capricious," and therefore reviewable under the APA. The court held to the contrary, explaining that the remedial scheme of the CSRA would be "impermissibly frustrated" by permitting judicial review of an agency's reassignment decision outside the detailed framework of the CSRA. The court wrote that Congress' failure to provide for judicial review of the reassignment in question reflected a "congressional intent that no judicial relief be available—that the matter be deemed 'committed to agency discretion by law....'" 714 F.2d at 174 (citation omitted).

The Fifth Circuit has also held that reassignment decisions are not reviewable in the federal courts under either the CSRA or the APA, noting that Congress, "[i]n balancing conflicting needs for efficiency and employee protection, ... [chose to leave] 'personnel actions,' including reassignments, to administrative discretion." *Broadway v. Block*, 694 F.2d 979, 984 (5th Cir.1982). Other circuits have defined the scope of judicial review of CSRA personnel actions such as the reassignment at issue here in a similarly restrictive manner.[1]

---

1. *See, e.g., Weatherford v. Dole,* 763 F.2d 392

(10th Cir.1985) (following *Broadway* in holding

This circuit has addressed the extent to which the CSRA forecloses judicial review of personnel actions in two cases: *Braun v. United States*, 707 F.2d 922 (6th Cir. 1983), and *Gilley v. United States*, 649 F.2d 449 (6th Cir.1981). In *Braun*, we held that the CSRA provisions for the protection of "whistleblowers" against minor personnel actions, which were identical to the CSRA provisions protecting against marital status discrimination, were intended to be comprehensive, and to "preclude independent lawsuits by individual claimants." 707 F.2d at 925. The reasoning in that case focused specifically on the intent of Congress regarding whistleblowers, and did not address Congress' general intent with regard to judicial review of personnel actions. The plaintiff contends that the more expansive language of our decision in *Gilley* compels the opposite result where a reassignment on the basis of marital status discrimination is alleged. The plaintiff calls our attention to dicta in *Gilley* to the effect that passage of the CSRA did not eclipse the authority of a district court to exercise its "traditional equitable powers" by enjoining a prohibited personnel practice. 649 F.2d at 453. That conclusion was supported by reference to the admonition of the Supreme Court in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." We wrote in *Gilley* that the CSRA did not constitute clear and convincing Congressional intent to restrict the power of the federal courts to issue equitable relief under the "federal question" grant of jurisdiction, 28 U.S.C. § 1331 (1976), particularly in view of the general doctrine disfavoring statutory repeal by implication. *See TVA v. Hill*, 437 U.S. 153, 190, 98 S.Ct. 2279, 2299, 57 L.Ed.2d 117 (1978); *Morton v. Mancari*, 417 U.S. 535, 549, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974).

Whether or not *Braun* and *Gilley* can be reconciled, and how their principles would control disposition of this case are questions that have been rendered largely academic by the recent decision of the Supreme Court in *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). In *Fausto*, the plaintiff, a "nonpreference eligible" employee in the "excepted service" of the Department of the Interior sought to obtain back pay accumulated during an allegedly unwarranted suspension. After exhausting all administrative remedies available under the CSRA, the plaintiff brought suit in the Claims Court, alleging a violation of the Back Pay Act, 5 U.S.C. § 5596, and basing jurisdiction on the Tucker Act, 28 U.S.C. § 1491. The Court held that the CSRA, which afforded nonpreference eligibles in the excepted service no administrative or judicial review of the challenged adverse personnel action, deprived the courts of jurisdiction to hear the complaint under the Back Pay Act. The Court determined that Congress intended the CSRA to foreclose all review of the particular administrative action taken by the Department of the Interior. This understanding of Congressional intent was reached by closely examining the general purposes the CSRA was intended to serve, the text of that portion of the Act relevant to plaintiff's legal claim, and the overall structure of judicial review established by the CSRA. *Fausto*, 484 U.S. at 443–44, 108 S.Ct. at 671–72. Following the Court's lead, we dispose of Ryon's jurisdictional arguments by addressing each of these three considerations below.

## A. The Language and Structure of the CSRA Regarding Judicial Review of Personnel Actions

▇▇▇ The CSRA establishes two separate procedures for review of agency ac-

no implied right of action under the CSRA to contest a reassignment in federal court); *Schrachta v. Curtis*, 752 F.2d 1257 (7th Cir.1985) (no implied right of action under the CSRA to enforce the "merit system principles" in 5 U.S.C. § 2301); *Veit v. Heckler*, 746 F.2d 508, 510–11 (9th Cir.1984) (no implied right of action under the CSRA for agency actions not provided for in the Act; "the comprehensive nature of the procedures and remedies provided by the CSRA indicates a clear congressional intent to permit federal court review as provided in the CSRA or not at all." 746 F.2d at 511); *Pinar v. Dole*, 747 F.2d 899, 910 (4th Cir.1984) (Congress intended the CSRA review provisions for prohibited personnel actions to be exclusive.).

tions taken against preference eligible employees such as Ryon. Which of the two procedures is followed depends upon whether the action taken is relatively severe, and hence classified as an "adverse action," or falls into the more benign category of "personnel action." Preference eligible civil service employees are protected from "personnel actions," such as the reassignment in this case, only if such actions are shown to have been actuated by one of the specific improper motives listed in 5 U.S.C. § 2302(b)(1), and hence to constitute a "prohibited personnel practice." An employee alleging a prohibited personnel practice, is accorded no right to appeal the action directly to the MSPB. Instead, the employee may petition the OSC to investigate his claim.[2] The OSC must then investigate the allegations, *see* 5 U.S.C. § 1206(a)(1), 5 C.F.R. §§ 1250–61 (OSC regulations), and, if it finds them meritorious, issue a report including findings and recommendations of corrective action to the agency taking the contested measures. If the agency then fails to take the recommended action, the OSC may, in its discretion, request the MSPB to order corrective action. *See* 5 U.S.C. § 1206(c)(1)(A) and (B).

The text of the CSRA providing for review of personnel actions, including the reassignment in this case, contains no mention whatsoever of judicial review. In the context of the detailed and comprehensive provisions of the CSRA in this area, we find this omission particularly telling. It is hard to imagine that such an intricate statutory scheme was intended as a mere alternative to direct review in the federal courts, especially where Congress has failed to provide even the slightest hint to that effect in the statute itself.

This plain reading of the CSRA's text controlling review of reassignments where marital status discrimination is alleged is reinforced by an overview of the structure

the Act sets up for review of the two categories of agency action affecting employees. Congress designated more serious agency actions including removal, reduction in pay or grade, or suspensions for more than 14 days, as "adverse actions" under 5 U.S.C. § 7512, and specified that they be taken only where the government could demonstrate that the employee at whom they were directed had engaged in misconduct, and that the action taken would "promote the efficiency of the service." 5 U.S.C. § 7513; *see, e.g., Dominguez v. Department of Air Force,* 803 F.2d 680 (Fed.Cir.1986). Where these relatively serious sanctions are invoked, the CSRA provides the right to appeal directly to the MSPB, *see* 5 U.S.C. § 7513(d), 5 U.S.C. § 4303, 5 U.S.C. §§ 7501–7701, and judicial review of the MSPB decision in the Court of Appeals for the Federal Circuit, 5 U.S.C. § 7703(b)(1).

An understanding of the structure of the CSRA's provisions for judicial review of both categories of agency employment action yields greater insight into Congress' specific intentions regarding review of "personnel actions." First, we note that the existence of provisions in the CSRA for eventual judicial review of more serious adverse actions strongly evinces that Congress did not simply assume, as plaintiff contends, that such review would be available for all agency actions under pre-existing federal statutes, such as the APA or the Mandamus Act.

Second, when the review provisions for adverse actions are juxtaposed with Congress' conspicuous failure to provide for such review of personnel actions, by far the most compelling inference is that Congress chose as a matter of policy to accord greater process to those employees alleging a more serious deprivation of right. In this regard, we also take note of the explicit provisions in the CSRA to the effect that appeals of adverse actions in the federal

---

**2.** The aggrieved employee may also pursue her rights under the internal grievance system established by the agency employing her. Pursuant to its responsibilities under the CSRA, 5 U.S.C. § 1302(b), the Office of Personnel Management requires all agencies covered by

the Act to establish and administer an internal grievance system in accordance with various procedural rules. 5 C.F.R. § 771.301. The extent to which Ryon pursued his rights under such a system is not clear from the record of this case.

courts be available only from decisions of the MSPB and not directly from agency disposition. Were we to grant plaintiff's request for direct review of his allegation of a prohibited personnel practice in federal district court, we would allow him more immediate access to the courts than the CSRA provides to those seeking review of an adverse action. In so doing, we would turn the review structure of the CSRA on its head. We agree with the conclusion of the District of Columbia Circuit that

> the exhaustive remedial scheme of the CSRA would be impermissibly frustrated by permitting, for lesser personnel actions not involving constitutional claims, an access to the courts more immediate and direct than the statute provides with regard to major adverse actions.

*Carducci v. Regan,* 714 F.2d at 174.

Finally, it is significant that, by its terms, the CSRA grants employees the right to appeal adverse actions only to the Federal Circuit. The limitation is consistent with Congress' intention that the haphazard jurisdictional arrangement preceding the CSRA, which resulted in numerous splits among the circuits, should give way to one coherent body of law in the area of civil service employee rights. Limiting the appeal of adverse actions to the Federal Circuit would serve no apparent purpose if litigants could nevertheless appeal personnel actions to district courts in each of the circuits under the various jurisdictional statutes predating the CSRA. All of these aspects of the structure of the CSRA indicate that its review provisions for personnel actions were intended to be exclusive.

## B. Legislative History of the CSRA

Our understanding of Congressional intent regarding review of reassignment orders is further informed by the Supreme Court's exposition of the legislative history of the CSRA in *Fausto.* The Court found that the CSRA was designed to effect a complete overhaul of "the 'outdated patchwork of statutes and rules built up over almost a century' that was the civil service system, S.Rep. No. 95–969, p. 3 (1978), U.S. Code Cong. & Admin.News 1978, p. 2723."

*Fausto,* 484 U.S. at 444, 108 S.Ct. at 671. In particular need of such revision was the framework for obtaining administrative and judicial review of personnel action which had grown without any coordinating impulse to comprise a haphazard array of statutes. This cumbersome system was widely criticized for inhibiting needed disciplinary action against employees, for allowing wide variations in the disposition of the same matters heard on review by different courts, and for permitting redundant review of agency action in the district courts and the courts of appeals. Congress responded to these criticisms in the CSRA by setting out in detail and with deliberate regard for both the legitimate interests of federal employees and the need for sound and efficient administration, the procedures to be followed by the agencies and the courts in remedying violations of rights accorded employees in the Act.

With this understanding of "Congress' perception of the law that it was shaping or reshaping," *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 378, 102 S.Ct. 1825, 1839, 72 L.Ed.2d 182 (1982) (footnote omitted), any lingering doubt that Congress intended the CSRA to function as the exclusive avenue for review of agency personnel actions may be put to rest. To hold, as plaintiff asks us here, that personnel actions are reviewable in federal courts under general jurisdictional statutes enacted before the CSRA would mean a return to the chaotic conditions which the CSRA was specifically crafted to remedy.

In short, the text of the CSRA, the structure of review it establishes, and the legislative history of the Act, all lead ineludibly to the conclusion that Congress intended review of agency reassignment decisions to be confined to the specific procedures set out in the text of the CSRA. Our refusal in *Gilley* to restrict judicial review absent clear and convincing evidence has been answered definitively by *Fausto*'s determination that "Congress' intention is fairly discernible, and ... 'the presumption favoring judicial review ... [has been] overcome by inferences of intent drawn from the statutory scheme as a whole.'" 484 U.S. at 452, 108 S.Ct. at 676 (citation omitted).

C. Jurisdiction Under the Mandamus Act

 Plaintiff's argument that the district court possessed subject matter jurisdiction under the Mandamus Act, 28 U.S.C. § 1361, to issue a writ of mandamus compelling his reinstatement deserves individual attention to emphasize the fact that such relief would not lie even without regard to the exclusivity of the CSRA. A brief recital of the requirements of the Mandamus Act suffices to show that they are not met by the facts of this case.

Section 1361 provides:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

The prerequisite that a duty be owed to the plaintiff has been read narrowly to require that the officer or employee of the United States owe a "ministerial duty that [is] compelled by law." 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3655 (2d ed. 1985). As we explained in *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir.1987):

> For there to be a "duty owed to the plaintiff" within the meaning of section 1361, there must be a "mandatory or ministerial obligation. If the alleged duty is discretionary or directory, the duty is not 'owed.'" *Short v. Murphy*, 512 F.2d 374, 377 (6th Cir.1975). A duty is not "owed" unless the obligation is "'plainly defined and peremptory.'"

(Citations omitted). Clearly, the reinstatement requested by Ryon cannot be characterized as a ministerial act. Decisions of the DMA concerning where to assign personnel are highly discretionary, requiring supervisors to determine how best to deploy employees in light of the myriad objectives of the agency. Factors too numerous to mention here must all be taken into account by experienced experts in formulating assignment decisions, making mandamus improper under these circumstances regardless of the exclusive role assumed by the CSRA.

The plaintiff did not request the district court to issue a writ of mandamus against the OSC for failure to investigate his claim. Whether or not such relief would be appropriate where necessary to compel the OSC to perform an adequate investigation of an employee's complaint is therefore beyond the scope of this opinion.[3]

AFFIRMED.

---

**3.** The District of Columbia circuit has held that mandamus may be appropriate to compel the OSC to perform its statutory duty. *See Barnhart v. Devine*, 248 U.S.App.D.C. 375, 771 F.2d 1515, 1524 (D.C.Cir.1985); *Wren v. Merit Systems Protection Bd.*, 220 U.S.App.D.C. 352, 681 F.2d 867, 875–76 n. 9 (D.C.Cir.1982). Whether the use of mandamus to correct what would amount to an abuse of prosecutorial discretion is authorized under the law of this circuit is still an open question. In this regard it is important to note that we have been especially reluctant to issue the writ where it would cabin prosecutorial discretion. *See Peek v. Mitchell*, 419 F.2d 575 (6th Cir.1970) (mandamus is not proper to compel the Attorney General or the United States Attorney to prosecute known civil rights violators, to alter the scope of their investigations, or to conduct particular investigations; "the judicial control sought by the plaintiffs regarding these two defendants is beyond the power of this court.") *Id.* at 577.