**SOMEDAY BABY, INC.**

v.

**JTG OF NASHVILLE, INC. and Jim Haber.**

No. 3–89–0700.

United States District Court,
M.D. Tennessee,
Nashville Division.

Sept. 4, 1990.

Garry Chaffin, Nashville, Tenn., Stanley M. Chernau, Denney, Lackey & Chernau, Nashville, Tenn., for plaintiff.

Mark J. Patterson, Manier, Herod, Hollabaugh & Smith, Nashville, Tenn., for defendants.

## MEMORANDUM

JOHN T. NIXON, District Judge.

Presently before the Court is the Plaintiff's motion for a preliminary injunction and the Defendants' opposition. Both parties have submitted extensive briefs on the matter. For the following reasons, the Plaintiff's motion for a preliminary injunction will be GRANTED.

### Facts

The Plaintiff, Someday Baby, Inc., manufactures children's products which consist of a book and a related cassette recording that are sold together in one package. The present dispute concerns the "Puzzle Piece" packaging design used by the Plaintiff. In this design scheme, the plastic case containing the cassette tape fits within a window on the front of the book's package, and the artwork on the cassette case completes a larger image on the box in the same way that a jigsaw puzzle is completed by its final piece.

The Defendant JTG of Nashville, Inc., the plaintiff's exclusive distributor in the book industry, has begun selling several products of its own which utilize the puzzle piece design. The Plaintiff has sued for unfair competition under the Lanham Trade–Mark Act, 15 U.S.C.A. § 1125(a), and has also asked the Court to assume pendent jurisdiction over state claims grounded in common law trademark infringement, breach of fiduciary duty, and unfair competition.

The Plaintiff has requested a preliminary injunction prohibiting the Defendant from manufacturing, marketing, selling or distributing all products which embody the "Puzzle Piece" design until the matter is resolved. Trial is scheduled for September 18, 1990.

### Discussion

In order to justify a preliminary injunction, the Plaintiff must show that there is a substantial likelihood that it will succeed on the merits; that a substantial threat exists that Someday Baby will suffer irreparable harm if injunctive relief is not granted; that the threatened injury to Someday Baby outweighs the harm that an injunction would cause JTG of Nashville; and that the granting of an injunction would serve the public interest. *Mason County Medical Association v. Knebel*, 563 F.2d 256, 261 (6th Cir.1977). In addition, Someday Baby must demonstrate that it has no adequate remedy at law. *Gilley v. U.S.*, 649 F.2d 449, 454 (6th Cir.1981).

■ In order to succeed on the merits in an action under 15 U.S.C. § 1125(a), the Plaintiff must demonstrate:

1) that the trade dress or product configuration of the competing products is confusingly similar;

2) that the appropriated feature of the trade dress or product configuration is primarily nonfunctional; and

3) that the trade dress or product configuration has obtained secondary meaning.

*Kwik–Site Corp. v. Clear View Mfg. Co., Inc.*, 758 F.2d 167, 178 (6th Cir.1985), citing *Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1445 (C.A.F.C.1984).

■ It appears to the Court that there is a substantial likelihood of confusion between the Plaintiff's products and the Defendants'. The Sixth Circuit has set out seven factors which should be considered in determining whether or not there is a likelihood of confusion:

1. degree of similarity (of the trade dress or product configuration);

2. similarity of goods or services for which the marks are used;

3. area and manner of concurrent use;

4. strength of the mark;

5. sophistication of purchasers;

6. plaintiff's intent; and

7. actual confusion.

*Kwik–Site Corp.*, 758 F.2d at 178.

Having applied the above factors to the present case, the Court concludes that the

likelihood of confusion is high. The distinguishing marks at issue, the puzzle piece design employed by both parties, are extremely similar. The concept of allowing the cassette case to show through the product's package and complete the cover artwork is sufficiently novel and memorable that two products packaged in this manner are likely to appear extremely similar, if not identical, in their packaging. Likewise, the products themselves are extremely similar. Both the Plaintiff and the Defendant sell packages consisting of a book and a cassette for small children. The Defendant has suggested that there is a significant distinction between lullabies and other children's recordings, but the Court disagrees that this difference is significant; it appears to the Court that any two products consisting of a children's story or music would be sufficiently similar to contribute to the likelihood of confusion for purposes of trademark analysis. Both the Plaintiff's and the Defendants' products are directed towards the same target audience: individuals shopping for small children, so they would therefore be marketed and distributed through the same channels of trade.

The puzzle piece design appears to be an extremely strong mark. It is easily the most recognizable and distinctive characteristic of the packaging, and is therefore likely to make a strong impression on consumers when they see it in a store. The Plaintiff has stated that it was its intent to use the puzzle piece packaging scheme as a means to identify its product and create a distinctive appearance. Although the affidavits filed by the Plaintiff illustrate only one instance of actual confusion (see affidavit of Jim Thomas), the Court believes that all of these factors, taken together, show a strong likelihood of confusion between the Plaintiff's product and that of the Defendants.

Regarding the second element of the Plaintiff's claim, the requirement that the puzzle piece design be primarily nonfunctional, the Court is satisfied that the packaging of the Plaintiff's product is primarily decorative rather than functional.[1] The puzzle piece design relates entirely to the product's appearance *before it is purchased;* the packaging is torn open and thrown away before the actual product, the book and cassette, can be used. The packaging has no effect on the actual product either in terms of cost of production or in terms of quality.

In reaching this conclusion the Court has relied on the reasoning used by Judge Posner in *W.T. Rogers Co., Inc. v. Keene,* 778 F.2d 334 (7th Cir.1985).[2] In *W.T. Rogers,* the plaintiff designed a plastic desktop letter tray, which was distinctive because the panels on each end were hexagonal, rather than the more traditional rectangular shape. The Court held that the hexagonal panels were a proper subject of trademark protection because they did not contribute to the product in any useful manner, other than to give it a distinctive and recognizable appearance. To illustrate its reasoning, the Court used a football's oval shape as an example of a functional characteristic, and an automobile's hood ornament as an example of a nonfunctional one:

> The football's oval shape is functional in the following practical sense: it would be found in all or most brands of the product even if no producer had any desire to have his brand mistaken for that of another producer. A feature functional in this sense—a feature that different brands share rather than a feature designed to differentiate the brands—is unlike those dispensable features of the particular brand that, like an arbitrary identifying name, rivals do not need in order to compete effectively. So if an automobile manufacturer places at the front end of its hood a statue of Mercu-

---

1. The reason for requiring that a feature be nonfunctional before it may qualify for trademark protection is that it would be unfair to the plaintiff's competitors to allow a useful feature to be removed from the public domain in the absence of a patent.

2. Although *W.T. Rogers,* a Seventh Circuit decision, is not binding on this Court, it provides a useful analysis of the functionality issue presently before the Court.

ry, it can if it wants make this its trademark (or one of its trademarks), because its competitors do not need a statue of Mercury on the hoods of their cars in order to compete. To put this differently, a functional feature is one which competitors would have to spend money not to copy but to design around, as they would have to do if they wanted to come up with a non-oval substitute for a football. It is something costly to do without (like the hood itself), rather than costly to have (like the statue of Mercury).

*W.T. Rogers,* 778 F.2d at 339 (parentheticals in original).

The puzzle piece packaging scheme appears to be a feature more like the hood ornament than the hood itself, or the oval shape of a football. It does not improve the book or the cassette, nor does it reduce the cost of producing them. Accordingly, the Court finds that the packaging scheme is a nonfunctional, decorative feature of the Plaintiff's product, and cannot be denied trademark protection on the grounds that it is functional.

The Plaintiff also bears the burden of showing that its packaging scheme has acquired secondary meaning. In this regard the Sixth Circuit Court of Appeals has held:

> To prove secondary meaning in trade dress, it [is] not necessary to show that the public knew the identity of the (manufacturer). "[I]t is the article itself and its good qualities which the public appreciates and which cause it to desire to get the genuine article made by the manufacturer who has established its reputation, rather than something made by some one else." (citations omitted)

*Tas–T–Nut Co. v. Variety Nut & Date Co.,* 245 F.2d 3 (6th Cir.1957). The proof thus far has shown that the Plaintiff was the first user of the puzzle piece design, and that it has sold over four hundred thousand units of its product. Although the consumer might not associate the puzzle piece design with Someday Baby at this juncture, the controlling authority in the Circuit holds that such an association is not necessary; all that is required is that the buying public associate the distinctive design with the Plaintiff's product and its good qualities. The Court believes that the plaintiff

has shown a sufficient likelihood of proving this element at trial to warrant the granting of injunctive relief.

In addition to showing a substantial likelihood of success on the merits, the Plaintiff must satisfy several other requirements before injunctive relief will be granted. *See Mason County Medical Association v. Knebel,* 563 F.2d 256, 261; *see also Gilley v. U.S.,* 649 F.2d 449, 454. The Court believes that these requirements have been met.

It appears that if injunctive relief is not granted, the Plaintiff will suffer irreparable harm. If the Plaintiff's allegations regarding likelihood of confusion are true, the defendant's products will take away part of the Plaintiff's market share, at least partially due to its "piggybacking" on the plaintiff by copying its distinctive trade dress. It would be impossible to measure the amount of sales lost by the Plaintiff as a result of the Defendant's conduct, because there would be no way of determining how many consumers failed to buy the Plaintiff's products as a result of the confusion created by the Defendant. In addition, any dilution in the trademark value of the plaintiff's puzzle piece packaging scheme could not be repaired by money damages. For these reasons it appears to the Court that the Plaintiff stands to suffer irreparable harm if an injunction is not granted, and that the Plaintiff would have no adequate remedy at law. *See Gilley v. U.S.,* 649 F.2d 449.

The Court is also required to examine whether the threatened harm to the Plaintiff is outweighed by the harm that an injunction would cause the Defendant. The Court is aware that a preliminary injunction will interfere with the Defendant's ability to fill orders it may have already taken, and to satisfy its customers. However, the short time remaining before trial, the fact that a relatively small percentage of the Defendant's products are implicated, and the fact that the Defendant began marketing three of the products at issue *after* this lawsuit was commenced all draw the Court to the conclusion that the threatened harm to the Plaintiff outweighs the harm that an injunction would cause the Defendant.

Finally, the Court holds that the public interest is best served by protecting the right of manufacturers to identify their products through the creative use of trade dress, and accordingly an injunction which protects that right for the Plaintiff until the time of trial will be in the best interest of the public.

For the foregoing reasons the Plaintiff's request for a preliminary injunction is GRANTED. An appropriate order will be entered contemporaneously with this Memorandum.

## ORDER

For the reasons stated in the accompanying Memorandum the Plaintiff's motion for preliminary injunction is GRANTED. Accordingly, the Defendants are enjoined from marketing or selling any of their own products which utilize the "Puzzle Piece" design until such time as this case is resolved.