## FEDERAL DEPOSIT INSURANCE CORPORATION

v.

## BELL FORGE ASSOCIATES, LTD., and Turner Management, Inc.

### No. 3–90–0858.

United States District Court,
M.D. Tennessee,
Nashville Division.

Oct. 30, 1990.

Reba Brown, John R. Tarpley, Lewis, King, Krieg & Waldrop, Nashville, Tenn., for plaintiffs.

Thomas T. Pennington, Denney Lackey & Chernau, Nashville, Tenn., defendants.

## MEMORANDUM

JOHN T. NIXON, District Judge.

This Memorandum sets forth the reasoning behind the Court's Order, entered on October 23, 1990, denying the plaintiff's motion for a preliminary injunction. Oral argument was heard on October 18, 1990.

### FACTS

The instant action arises from the acquisition of the Shoppes of Bell Forge ("The Shoppes"), a Nashville shopping center, by the Federal Deposit Insurance Corporation ("FDIC") at a foreclosure sale in September, 1990. The FDIC is seeking a preliminary injunction to restrain the defendants' continued possession of the Shoppes in light of the foreclosure sale. The defendant Bell Forge Associates ("BFA") maintains, notwithstanding the foreclosure sale, that BFA and its property manager, Turner Management ("Turner") are still entitled to possession of The Shoppes.

The road leading to this Court has been well-worn by previous legal action over The Shoppes. BFA acquired The Shoppes in 1986 subject to a construction loan extended to the prior owner by a subsidiary of Sunbelt Savings & Loan Association ("Old Sunbelt"). Soon after, BFA and Old Sunbelt fell into a dispute over the loan which resulted in an action before the Chancery Court for the Twentieth Judicial District of Tennessee. While motions by both parties were pending in Chancery, BFA filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York.

After BFA filed its Petition in Bankruptcy, Old Sunbelt was taken over by the Federal Savings & Loan Insurance Corporation ("FSLIC"). The FSLIC was, in turn, taken over by the FDIC, pursuant to the enactment of the Financial Institution Recovery, Reform and Enforcement Act, Pub.L. No. 101–73, 101 Stat. 183 (1989). A "New Sunbelt" was then created to be the repository of certain assets formerly held by Old Sunbelt. New Sunbelt, either on its own account or as an agent for the FDIC,

began to pursue the collection of Old Sunbelt's indebtedness in the Bankruptcy Court in New York. Hence, the foreclosure sale.

A short time after the foreclosure sale, the property manager engaged by the FDIC for The Shoppes attempted to take possession of the property and its management offices from Turner Management. However, Turner refused to relinquish possession and the Metropolitan Police were called to prevent the FDIC's agent, Carl Storey, III, from taking possession.

The plaintiff argues that it is entitled to possession of the property as a result of the foreclosure sale. It further contends that Turner's and BFA's continued possession of The Shoppes prevents the shopping center from functioning in a business-like fashion and compromises its commercial integrity.

The defendant claims that it was not provided with proper notice regarding the foreclosure sale under the terms of BFA's Deed of Trust for The Shoppes. It also alleges that in light of the foreclosure sale, the Deed of Trust dictates that BFA is now a tenant at will. As a result, its removal from possession can only occur upon a successful forcible and unlawful detainer suit by the property's new owner.

## DISCUSSION

In considering a motion for a preliminary injunction, a district court must apply a four-step analysis. The court must determine whether the plaintiff has shown:

1) a substantial likelihood of success on the merits;

2) a substantial threat exists that he or she will suffer irreparable harm if the preliminary injunction is not granted;

3) that the threatened injury to the plaintiff outweighs the harm that an injunction would cause the defendant; and

4) that the granting of an injunction would serve the public interest.

*Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir.1985); *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir.1985); *Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir.1977); *Someday Baby, Inc. v. JTG of Nashville, Inc.*, 744 F.Supp. 811 (M.D.Tenn. 1990).

The FDIC has not demonstrated a substantial likelihood of its success of the merits of the underlying claim because its remedy is clearly stated in the Deed of Trust. The Deed of Trust says that in the event that The Shoppes property is sold "[BFA] will at once surrender possession of the Premises, and ... become ... the tenant at will of the purchaser, and [be] removable by process as upon a forcible and unlawful detainer suit...." Deed of Trust, 7(d), 13. Under Tennessee Law, the Court of General Sessions or, in some cases, the Circuit Court are the appropriate forums in which to bring a forcible and unlawful detainer action. Tenn.Code Ann. §§ 29–18–107, 29–18–108 (1980). By the terms of the Deed of Trust, the FDIC cannot show a substantial likelihood that it is entitled to possession of The Shoppes without first proceeding in state court.

Since the issue of which party is rightfully entitled to possession must be determined by a detainer action, there is a question about what to do with the payment of costs and receipt of rents at The Shoppes. At the oral argument of the plaintiff's motion, the parties suggested that they could submit monthly operating statements to the Court until the rightful possessor of the property is determined.

In light of the forgoing analysis, the Court DENIES the plaintiff's motion for a preliminary injunction and ORDERS the parties to submit to the Court an operating statement for The Shoppes at the end of each month. The Court entered an Order on October 23, 1990 in accordance with the reasoning set forth in this Memorandum.