**Charlett Marie HARPER, Plaintiff-Appellee, Cross–Appellant,**

v.

**Anthony M. FRANK, Postmaster General, United States Postal Service, Defendant–Appellant, Cross–Appellee.**

**Nos. 91–2200, 91–2232.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 3, 1992.

Decided Feb. 8, 1993.

John R. Runyan (argued and briefed), Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, Detroit, MI, for plaintiff-appellee cross-appellant.

Jennifer M. Gorland, Office of the U.S. Atty., Detroit, MI, Alice L. Covington, U.S. Postal Service, Law Dept., Jeffrica Jenkins Lee (argued and briefed), Robert S. Greenspan, U.S. Dept. of Justice, Appellate Staff, Civ. Div., Washington, DC, for defendant-appellant cross-appellee.

Before: MILBURN and BATCHELDER, Circuit Judges; and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

Both parties appeal from the district court's disposition of this action by a retired postal employee claiming race and gender discrimination in the denial of her application for a promotion. After a bench trial, the district court held that the plaintiff had produced no proof of discrimination on the basis of sex and that her proof of race discrimination failed to show by a preponderance of the evidence that she was denied the promotion she sought because she is black. 767 F.Supp. 145.

During the course of the trial the court heard evidence that the defendant had not followed its own regulations governing personnel actions in denying the plaintiff's application for promotion. Based upon this evidence the district court held that the defendant had "failed to substantially comply" with its own regulations. The court then ordered the defendant "to refer this matter to the Merit Systems Protection Board (MSPB) or other appropriate body within the Postal Service to fashion a remedy within sixty (60) days."

We affirm the district court's dismissal of the plaintiff's discrimination claim and reverse the order directing the defendant to refer the matter to the MSPB or other appropriate agency.

## I.

### A.

Plaintiff Charlett Marie Harper, a black female with a bachelor's degree in business administration was employed by the U.S. Postal Service for twenty-seven years. After completing a specialized two-year Postal Service training program, Ms. Harper was temporarily employed in the Industrial Engineering Department and actually served in the position of Industrial Engineer, EAS-21 for a period of more than twenty-five months.

On June 9, 1986, the Postal Service posted a vacancy announcement for the position of Manager, Engineering Technical Unit (ETU), EAS–23 at its general mail facility in Detroit. Eight postal employees including Ms. Harper applied for the position. Four were white males, one was a black male, and two were women. On October 6, 1986, the Postal Service re-posted the announcement and placed a newspaper advertisement seeking applicants from outside the Postal Service. The advertisement indicated the requirements for the position as follows:

> Requirements: A BA degree in industrial engineering. Four (4) years of progressive industrial engineering experience of which one must be varied experience which demonstrated an expanding breadth and depth of knowledge in applying industrial engineering principles and techniques OR a Master's degree in industrial engineering and a combination of two (2) years professional industrial engineering experience.

Following regulations, the Postal Service established a Promotion Review Board (the Board) to consider applications for the position.

The "basic" qualification standards for the position include that the person hired have an industrial engineering degree. The Postal Service has "alternate" qualification standards that permit a person without an industrial engineering degree to qualify for the position. Ms. Harper's application was rejected and she was denied an interview. The court found that her application was screened from further consideration because she did not have a degree in industrial engineering.

One postal employee—the black male—and several outside applicants were interviewed. The Board recommended William Heilman, an outside white male applicant with a bachelor's degree in industrial management for the position, and he was eventually appointed.

### B.

After filing a complaint with the Equal Employment Opportunity Commission, the plaintiff brought this action under Title VII of the Civil Rights Act of 1964, as it applies to employment by the federal government, 42 U.S.C. § 2000e–16 (1988). The plaintiff's only claims in her complaint were for relief on account of alleged race and gender discrimination. Although the complaint was never amended, the district court found that the issue of the defendant's failure to follow its own regulations and procedures was tried with implicit consent of the parties.

In dismissing the claims of discrimination the district court found that the plaintiff had established a prima facie case of racial discrimination, but that the defendant had presented a legitimate non-discriminatory reason for rejecting her application—that Mr. Heilman was better qualified. The court then found that the plaintiff was unable to prove that this explanation of the defendant's reason for selecting Mr. Heilman was pretextual. Finally, the court found that the plaintiff had failed to produce proof that her treatment was different from that accorded similarly situated non-minority employees, from which discrimination on the basis of race could reasonably be inferred.

Considering the second issue, the district court held that the Postal Service must follow its own regulations. The court then concluded that the plaintiff is entitled to judicial review of the promotion decision if the defendant "clearly disregarded" regulations designed to govern such personnel actions, even though the only judicial review of the merits of the selection of Mr. Heilman over the plaintiff is "in the context of her Title VII claim."

The district court found that the Board did not consider the plaintiff's qualifications under alternate standards, failed to follow proper procedures in recommending fewer than three applicants for the vacancy and acted improperly in seeking a waiver for Mr. Heilman's appointment. In the view of the court, these omissions were substantial departures from Postal Service regulations. Nevertheless, the court found that Mr. Heilman was appointed because the appointing officer and the Board found that he had "more technical knowledge" and "was more competent to manage an industrial engineering department" than any of the other applicants.

## II.

The plaintiff produced no direct evidence of either race or gender discrimination. We disagree with the district court's statement that she presented no evidence of gender discrimination. Her circumstantial evidence consisted of proof that no woman had ever served in the position of Manager ETU and none of the five males serving in that position from the early 1970s through 1986 had an industrial engineering degree, that the Board interviewed two male applicants and no female applicants, and that Mr. Ashton, the selecting officer, did not interview any of the women applicants. With respect to the claim of racial discrimination, the plaintiff produced no direct and very little circumstantial evidence that the defendant selected Mr. Heilman and rejected the plaintiff for promotion because of race. The Board that recommended Mr. Heilman consisted of one white male, one black male and one black female. Although the selecting officer was a white male, his action was reviewed by the Director of Human Services, a black male.

■ The plaintiff did not appeal the district court's finding of no race discrimination. Assuming the plaintiff made a prima facie case of gender discrimination, the defendant presented a legitimate non-discriminatory reason for choosing Mr. Heilman. The district court found that both the Board and Mr. Ashton felt that Mr. Heilman was the best qualified candidate for this position. This finding is supported by evidence in the record and is not clearly erroneous. The defendant was not required to prove by a preponderance of the evidence that this legitimate reason was the actual basis of his decision; he merely had to "raise[ ] a genuine issue of fact as to whether [he] discriminated against the plaintiff." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981) (footnote omitted). At this point in the analysis the defendant has a burden of production, not a burden of persuasion.

The burden of persuasion remains throughout with the plaintiff who has the opportunity to show that the "proffered reason" was not the actual one for the decision. *Id.* at 256, 101 S.Ct. at 1095. The plaintiff's immediate burden then "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* (citation omitted).

The *Burdine* Court also made clear that an employer is not required "to prove by objective evidence that the person ... promoted was more qualified than the plaintiff." Rather, the plaintiff must "demonstrate that similarly situated employees were not treated equally." See *id.* at 258, 101 S.Ct. at 1096.

We believe the district court correctly applied *Burdine* to the facts of this case. The plaintiff did not carry her ultimate burden of persuasion on the issue of intentional discrimination. Therefore, we affirm the district court's dismissal of the Title VII claim. The court recognized that, having failed in her Title VII claim, the plaintiff had no other recourse to judicial review of the merits of the defendant's selection decision. Because of its concern over the defendant's failure to follow all of its own regulations, however, the district court searched for a remedy that would provide the plaintiff some relief. This concern produced the order directing the defendant to refer Ms. Harper's claim to some administrative agency for consideration. The district court did not identify a jurisdictional basis for such a claim, but merely relied on the general rule that a government agency must follow its own regulations.

## III.

The Postal Reorganization Act (PRA), 39 U.S.C. §§ 101–5605 (1988), created the United States Postal Service as successor to the United States Post Office Department. Part II of the Act relates to personnel, and Chapter 10 deals with employment within the Postal Service. Section 1001(b) provides for officers and employees to be

in the postal career service, which is a part of the federal civil service. Appointments and promotions are to be made in accordance with procedures established by the Service. Section 1001(e) gives the Service the right "consistent with ... applicable laws, regulations, and collective-bargaining agreements— ... (2) to hire, promote, transfer, assign, and retain officers and employees ..." and to discharge and take other disciplinary actions against them.

Unlike other federal employees, postal employees may be represented by unions that bargain collectively with the Service. See 39 U.S.C. §§ 1202–1206. Like other federal employers, however, the Service is required to treat veterans and specified relatives of veterans as "preference eligibles" for purposes of appointment and promotion. See 39 U.S.C. § 1005(a)(2); 5 U.S.C. § 2108(3). Employees of the Service who are subjected to "adverse action" (defined by the statute as removal, suspension, reduction in pay or grade, or furlough) have administrative remedies prescribed in Chapter 75 of the Civil Service Reform Act of 1978 (CSRA), Pub.L. 95–454, 92 Stat. 1111 et seq. (codified as amended in scattered sections of 5 U.S.C. (1988)). See 39 U.S.C. § 410(a). These rights include a hearing or the opportunity to answer charges after reasonable notice, and in cases of the most severe actions, an appeal to the Merit Systems Protection Board. See 5 U.S.C. § 7513(d); 5 U.S.C. § 4303; 5 U.S.C. §§ 7501–7701. Many other provisions of the CSRA that apply generally to federal employees were not incorporated into the PRA. See 39 U.S.C. § 410(a).

The plaintiff was a "nonpreference eligible" member of the "excepted service." See 39 U.S.C. § 1005(a)(2); 5 U.S.C. § 2108(3); 39 U.S.C. § 1001(b); 5 U.S.C. § 2103. Because she sought relief under Title VII in her complaint, the plaintiff introduced personnel bulletins and excerpts from an employee manual in support only of her claims of gender and race discrimination. She contended that the defendant's failure to follow rules and regulations contained in these documents was evidence of unlawful discrimination in violation of Title

VII. The plaintiff never articulated a claim that the Postal Service failed to follow its own regulations as a separate basis for relief. Thus, the record does not contain a complete set of regulations setting forth all procedures for promotion and for review of denials of promotion.

### IV.

■ We have considered all of the contentions made by the parties in their briefs and at oral argument. We do not consider it necessary to answer each one separately, however, because we have concluded that the determinative question is whether the district court had jurisdiction to consider a claim for relief resting on failure of the Postal Service to follow its own regulations in denying Ms. Harper's application for promotion.

We have found no case exactly like this one, where a nonpreference eligible excepted employee of the Postal Service who is not a member of a collective bargaining unit contends that the PRA creates an implied cause of action for federal review of a nonadverse personnel decision. Nevertheless, we believe the reasoning of the courts that have found no implied cause of action for postal employees in somewhat different categories than the plaintiff leads to the conclusion that the PRA implies no such right for the plaintiff. Because the PRA, which contains a comprehensive scheme of employment rights within the Postal Service, contains no statutory right to judicial review, we conclude that the district court had no subject matter jurisdiction over this lately-discovered claim.

### A.

It seems clear to us that Congress adopted a comprehensive scheme for dealing with challenges to personnel actions of the Postal Service that does not include judicial review. Instead, it required the Postal Service to "establish procedures ... to assure its officers and employees meaningful opportunities for promotion and career development and to assure its officers and employees full protection of their em-

ployment rights by guaranteeing them an opportunity for a fair hearing on adverse actions, with representatives of their own choosing." See 39 U.S.C. § 1001(b).

To facilitate the first of these commands—to assure meaningful opportunities for promotion and career development—Congress provided in § 1006 that employees and officers of the postal career service are eligible for promotion and transfer to all executive branch and postal positions for which they are qualified. Congress also authorized the Postal Service, in § 1001(e) to make promotions, assignments and transfers "consistent with ... applicable laws, regulations and collective bargaining agreements." The second command—to provide a fair hearing on adverse actions—was satisfied by the requirement of § 1005(a) that Chapter 75 of the CSRA be applied to officers and employees of the Postal Service. As previously noted, Chapter 75 contains a comprehensive set of procedures for dealing with employee grievances involving adverse actions.

### B.

We believe that the Supreme Court's decision in *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), forecloses the plaintiff's claim of a right to judicial review for the failure to promote her. Like the plaintiff in *Fausto*, Ms. Harper is a "nonpreference eligible in the excepted service." The Supreme Court held that the CSRA provides no right of administrative or judicial review to such an employee from an adverse action. See 484 U.S. at 443, 108 S.Ct. at 671. The Court recognized the "elaborate" framework of the CSRA for evaluating the challenged action and found that the failure to provide for judicial review manifested "a considered congressional judgment" that employees so classified have no "statutory entitlement to review for adverse action of the type governed by Chapter 75." See *id.* at 448–49, 108 S.Ct. at 674. In this case, we recognize the comprehensive scheme that Congress established in the PRA for addressing review of personnel matters for postal employees, and likewise find "no

statutory entitlement to review" within the PRA.

The direct holding of the Court in *Fausto* does not apply to Ms. Harper's complaint because the Postal Service's failure to promote her was not an adverse action under Chapter 75. As we pointed out in *Ryon v. O'Neill*, 894 F.2d 199 (6th Cir.1990), however, it would be illogical to assume that Congress intended to grant greater rights to an employee affected by a less serious personnel action than the Supreme Court has found attaches to a more serious adverse action. See *id.* at 202–04. *Ryon* differs from the present case in that the plaintiff there was a preference eligible non-postal employee and thus entitled to a degree of review under Chapter 23 of the CSRA for "prohibited personnel actions" not accorded to postal employees. If anything, this difference strengthens the conclusion that one in Ms. Harper's shoes has no right to judicial review.

The plaintiff's reliance on our decision in *Booher v. United States Postal Service*, 843 F.2d 943 (6th Cir.1988), is misplaced. *Booher* concerned the rights of a probationary employee to judicial review of his dismissal. In deciding that Booher had no right to judicial review, we reviewed and approved the district court's holding that the plaintiff had no cause of action either under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), or under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. See *id.* at 944–45. We also interpreted *Fausto* as upholding "denial of a judicial remedy in an analogous" case. See 843 F.2d at 946. *Booher* does not support Ms. Harper's position.

### C.

The plaintiff also argues that § 1006, which provides for promotions, carries with it an implied private right of action. We disposed of this argument in *Kaiser v. United States Postal Service*, 908 F.2d 47 (6th Cir.1990), *cert. denied*, 498 U.S. 673, 111 S.Ct. 673, 112 L.Ed.2d 665 (1991), where we said that the plain language of

§ 1006 does not evince a legislative intent to create entitlement to transfer or promotion, and "[t]he existence of a myriad of employment remedies compels the finding that Congress did not intend private enforcement of employment rights under the Postal Reorganization Act." See *id.* at 51. We explained that § 1006 makes employees *eligible* for promotion and transfer, but it does not *entitle* them to such treatment. See *id.* at 50. We stated:

> The congressional goal of maximizing career opportunities in the postal service can be accomplished by making employees *eligible* for transfer and promotion without giving them a cause of action to assert if they are denied transfer or promotion.

See *id.* We went on to examine the legislative history and found no indication of a contrary congressional intent. See *id.* at 51.

The plaintiff's argument that her status as a nonmember of a bargaining unit requires a finding that Congress intended to provide a right of action for her that it withheld from employees such as Kaiser is unpersuasive. Although postal employees who belong to a union have an avenue for grievances that nonmembers lack, all postal employees enjoy the benefit of comprehensive procedures, including consultation rights and referral to the Federal Mediation and Conciliation Service. The Postal Service also notes the availability of grievance and appeal procedures contained in the Postal Service's Employee and Labor Relations Manual. See 39 U.S.C. § 1004(b), (f); United States Postal Service Employee and Labor Relations Manual §§ 652.311, 652.32–.34.

We have not discussed pre-*Fausto* decisions from this or other circuits relied upon by the plaintiff. We note however, that some courts held prior to *Fausto* that there is no implied right of action under § 1001(b). See, *e.g., Blaze v. Payne,* 819 F.2d 128, 130 (5th Cir.1987); *Gaj v. United States Postal Service,* 800 F.2d 64, 68–69 (3d Cir.1986). In our view, *Fausto* altered the entire landscape with regard to claims by nonpreference eligible excepted federal

employees to a private right of action in a federal court. *Ryon,* 894 F.2d at 202. Although *Fausto's* holding relates only to attempts to obtain judicial review of adverse actions, its logic applies compellingly to claims for review of nonadverse actions. The Supreme Court emphasized the purpose of the CSRA to replace "the patchwork system [that existed prior to enactment of the CSRA] with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests ... of federal employees with the needs of sound and efficient administration." See 484 U.S. at 445, 108 S.Ct. at 672. The Court also held that any presumption favoring judicial review was "'overcome by inferences of intent drawn from the statutory scheme as a whole.'" See *id.* at 452, 108 S.Ct. at 676 (quoting *Block v. Community Nutrition Institute,* 467 U.S. 340, 349, 104 S.Ct. 2450, 2455, 81 L.Ed.2d 270 (1984).

## CONCLUSION

The plaintiff's complaint in *Fausto* was the same as Ms. Harper's—that the employer agency had failed to follow its own regulations in taking action detrimental to him. We believe the Supreme Court's conclusion that Fausto had no implied private right of action for this omission applies equally to Ms. Harper's claim in the present case. Thus, we conclude that the PRA contains no statutory provision for review of Ms. Harper's claim and also that there is no implied right of action under either § 1001(b) or § 1006 of that Act.

The judgment of the district court dismissing the Title VII discrimination claim is affirmed. The order directing the defendant to refer the matter to the MSPB or other appropriate body within the Postal Service is reversed. The district court had no jurisdiction to consider a claim by a postal employee that the Postal Service failed to follow its own regulations in denying the plaintiff a promotion. The district court will dismiss the entire action. Dismissal is without prejudice to any rights Ms. Harper may have to seek further re-

view of the promotion decision under internal procedures of the Postal Service.