# United States Court of Appeals
## For the First Circuit

_____

No. 01-1417

NIKHIL I. PATHAK,

Plaintiff, Appellant,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Defendant, Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Margaret J. Kravchuk, U.S. Magistrate Judge]

_____

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

_____

Alton C. Stevens, with whom Marden, Dubord, Bernier & Stevens was on brief for appellant.
Mark W. Pennak, United States Department of Justice, with whom Stuart E. Schiffer, Acting Assistant Attorney General, Paula Silsby, United States Attorney, and Marleigh D. Dover, United States Department of Justice, were on brief for appellee.

_____

December 19, 2001
_____

**LYNCH, <u>Circuit Judge</u>**.  Nikhil Pathak, a physician at the Veterans Administration Medical and Regional Office Center located in Togus, Maine, was suspended from his position for seven days as discipline for his sexual harassment of a nurse, Kathleen Lyons.  Lyons's sexual harassment claim was first investigated when, in 1994, she filed an administrative complaint, which prompted the Chief of Staff at the Center, Dr. E. Douglas Holyoke, to investigate the matter.  A few months later, and as a result of this investigation, Dr. Holyoke served Dr. Pathak with a notice of a proposed fourteen day suspension.  The notice cited fourteen "separate incident[s] of sexual harassment" that "when taken together . . . show a pattern of sexual harassment."  After Dr. Pathak obtained counsel, and his counsel filed a legal brief and orally argued his case, John Sims, the Director of the Center, sustained the charges, but reduced the proposed fourteen day suspension to seven days.

Dr. Pathak refused to accept the discipline, filed a formal grievance, and went to a hearing before an impartial grievance examiner. Following a three day hearing, the grievance examiner issued a written "Report of Findings and Recommendations," finding that Dr. Pathak had engaged in sexual harassment and recommending that the seven

day suspension be sustained.  The Department's Regional Director accepted the grievance examiner's recommendation and sustained the suspension.

In addition to her administrative complaint, Kathleen Lyons brought a lawsuit against both the hospital and Dr. Pathak alleging sexual harassment and other claims.  A Maine jury found the hospital liable[1] because of Dr. Pathak's harassment and awarded Nurse Lyons $375,000.[2]

Nonetheless, an unchastened Dr. Pathak filed a lawsuit in the United States District Court for the District of Maine seeking to challenge his seven day suspension.[3]  He sought review of the administrative suspension, arguing that the decisions of Center Director Sims, the grievance examiner, and the Regional Director were all arbitrary, unsupported by substantial evidence, and not in accordance with law.  Pathak also alleged

---

[1] Lyons's other lawsuit for assault against Pathak resulted in a verdict for Pathak.

[2] The jury award was reduced to $300,000 under the Civil Rights Act of 1991's damages cap, 42 U.S.C. § 1981a(b)(3) (1994).  The court awarded Lyons an additional $83,677.50 in attorney's fees.  Lyons v. Brown, No. 95-0194-B, 2000 U.S. Dist. LEXIS 11620, at *9 (D. Me. July 26, 2000).

[3] The parties consented to have any and all district court proceedings conducted before a magistrate judge.  Fed. R. Civ. P. 73(b); 28 U.S.C. § 636(c).

that Center Director Sims exhibited bias against him when Director Sims sustained the sexual harassment charges and imposed the seven day suspension and that this constituted a violation of due process of law.[4]  The district court entered summary judgment on all of Pathak's claims.  Pathak v. Dep't of Veterans Affairs, 130 F. Supp. 2d 140, 150 (D. Me. 2001).

## I.

Our review of the district court's grant of summary judgment is de novo.  Thomas v. Eastman Kodak Co., 183 F.3d 38, 47 (1st Cir. 1999), cert. denied, 528 U.S. 1161 (2000).

On Pathak's appeal, the Department of Veterans Affairs for the first time raises a jurisdictional argument that Pathak's challenge to the seven day suspension is not subject to judicial review.[5]  Pathak responds to the Department's argument by claiming that jurisdiction does in fact exist, at least as to his assertion of a violation of his constitutional rights.  But,

---

[4]     Pathak abandoned his equal protection claim in the district court, Pathak v. Dep't of Veterans Affairs, 130 F. Supp. 2d 140, 147 (D. Me. 2001), and he has not attempted to resurrect it here.

[5]     "A challenge to federal subject matter jurisdiction may be raised at any time, including for the first time on appeal."  Halleran v. Hoffman, 966 F.2d 45, 47 (1st Cir. 1992); see also Fed. R. Civ. P. 12(h)(3) ("Whenever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

at best, judicial review would only be available for colorable constitutional claims, Webster v. Doe, 486 U.S. 592, 603 (1988), and we agree with the Department that Pathak's constitutional claims are not even colorable. Accordingly, we agree with the district court that Pathak's complaint should be dismissed, but vacate the district court's grant of summary judgment and instead remand for a dismissal for lack of subject matter jurisdiction.

## II.

Jurisdiction over Pathak's challenge to his seven day suspension is governed by United States v. Fausto, 484 U.S. 439 (1988). The Fausto Court reasoned that because the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.), "established a comprehensive system for reviewing personnel action taken against federal employees," the Act's "deliberate exclusion of [nonpreference excepted service members] . . . from the provisions establishing administrative and judicial review for personnel action . . . prevents respondent from seeking judicial review . . . under the Back Pay Act," 484 U.S. at 455. Fausto stands for the general

proposition that judicial review is unavailable to a federal employee who has suffered an adverse personnel action if CSRA does not provide judicial review. Id. at 447-49, 455.

As a physician appointed to the Veterans Health Administration under 38 U.S.C. § 7401(1) (1994), Pathak is an "excepted service" employee. This is because, as a Veterans Health Administration physician, he is appointed "without regard to civil-service requirements," id. § 7403(a), and so he is not in the "competitive service," 5 U.S.C. § 2102 (1994), which means he is part of the "excepted service," id. § 2103(a). As a nonpreference eligible member of the excepted service, Pathak is not entitled to CSRA's protections for competitive service employees. See id. §§ 7501-7504; C.D. Moore, Personnel Actions that May Be Challenged, in Federal Civil Service Law and Procedures: A Basic Guide 3, 4-5 (E.M. Bussey, ed., 2d ed. 1990). Even if Pathak were covered by CSRA's provisions governing employees suspended for fourteen days or less, these protections do not provide for judicial review. 5 U.S.C. §§ 7501-7504; Fausto, 484 U.S. at 443 ("No provision of the CSRA gives nonpreference members of the excepted service the right to . . . judicial review of suspension for misconduct.").

Accordingly, under Fausto, Pathak cannot obtain judicial review of his suspension. See 484 U.S. at 447-48.

Because CSRA does not provide Pathak with a right to judicial review, the logic of Fausto dictates that he cannot go around CSRA and assert federal jurisdiction by relying upon the Administrative Procedure Act. See Mann v. Haigh, 120 F.3d 34, 37-38 (4th Cir. 1997) (extending Fausto's analysis to prohibit APA review of an adverse employment decision). If the result were otherwise, then Pathak, as a nonpreference excepted employee, would be entitled to judicial review unavailable to competitive service employees and preference eligibles. The result would be the same perverse outcome, rejected in Fausto, in which excepted service employees received more protection than competitive service employees who are supposed to be in a "preferred position." 484 U.S. at 449.

Second, Pathak argues that the specific statutory provisions governing Veterans Health Administration health professionals, not CSRA, govern his case. Congress has established an exclusive disciplinary scheme under 38 U.S.C. §§ 7461-7463 for Veterans Health Administration health professionals. It is under this scheme that Pathak was

-7-

suspended. This scheme explicitly provides for judicial review of discipline when the discipline is based on the professional conduct or competence of the physician. 38 U.S.C. § 7462 (1994). The statute, however, defines "[a] question of professional conduct or competence [a]s a question involving . . . [d]irect patient care . . . [or c]linical competence." Id. § 7461(c)(3). In this instance, it was Dr. Pathak's actions as an employee and as a supervisor that were at issue, not his clinical competence or direct patient care. In contrast with § 7462, which provides judicial review of discipline based on professional conduct or competence, Congress provided no right of review in § 7463, which governs discipline unrelated to professional conduct or competence. Congress's express provision of judicial review in § 7462, coupled with a complete omission of judicial review in § 7463 -- the provision governing Pathak -- is "persuasive evidence that Congress deliberately intended to foreclose further review of such claims." United States v. Erika, Inc., 456 U.S. 201, 208 (1982), quoted in Fausto, 484 U.S. at 448.

Although judicial review is not specifically precluded by § 7463, the court notes that these statutory provisions

generally offer the Secretary greater discretion in employment-related decisions (e.g., hiring) regarding § 7401(1) employees than he would have over other civil servants.  With that in mind, and reviewing these statutes as a whole, it makes sense that Congress would have precluded judicial review of suspensions of less than fourteen days for § 7401(1) employees when employees who are otherwise afforded greater statutory protection would not be entitled to such review.  Because neither of the relevant statutory schemes provide for judicial review, Pathak may not rely on the Administrative Procedure Act as an independent source of review here.[6]

## III.

The final issue is whether Pathak's claim of violation of due process even rises to the level of a colorable constitutional claim (or if it does, whether he can survive summary judgment), in which case this court might have jurisdiction notwithstanding the statutory bars discussed above, Webster, 486 U.S. at 603.  We conclude that Pathak's constitutional claim is not even colorable, and so we find it

---

[6]    We do not address the issue of whether the APA itself would exclude this disciplinary action from APA review as a matter affecting Pathak's "tenure" under 5 U.S.C. § 554 (1994).

-9-

unnecessary to reach Pathak's claim that we have jurisdiction over his constitutional claim notwithstanding our lack of jurisdiction over his statutory claims.

The claim is that Center Director Sims violated Pathak's right to due process by performing both investigatory and adjudicatory functions. As the district court recognized, even assuming that Director Sims performed both investigatory and adjudicatory functions, under Withrow v. Larkin, 421 U.S. 35, 47 (1975), the combination of functions does not alone violate due process. See O'Brien v. DiGrazia, 544 F.2d 543, 547 (1st Cir. 1976) ("Any per se rule seems foreclosed by Withrow."); 2 K.C. Davis & R.J. Pierce, Jr., Administrative Law Treatise § 9.9, at 101 (3d ed. 1994) ("The Supreme Court has never held a system of combined functions to be a violation of due process, and it has upheld several such systems."). Parties advancing due process arguments based on a combination of investigative and adjudicative functions, and the decision maker's bias allegedly resulting therefrom, have a very difficult burden of persuasion to carry. Withrow, 421 U.S. at 47; O'Brien, 544 F.2d at 547. Pathak has not met this burden. See Pangburn v. Civil Aeronautics Bd., 311 F.2d 349, 356-58 (1st

Cir. 1962) (rejecting a separation of functions challenge despite investigatory and adjudicatory overlap more significant than any overlap here).

What makes Pathak's argument not even colorable is that even if Center Director Sims were biased, it matters not. No discipline was imposed until there was an independent determination by an impartial grievance examiner, which was then accepted by the Department's Regional Director, that Pathak did indeed engage in sexual harassment and that his suspension was warranted. The undisputed evidence is that Dr. Pathak engaged in at least these actions: on a business trip inviting Nurse Lyons to his room "to look at the view" late at night (after she had seen the view by daylight), telling her he loved her at least twice, telling her that her husband would be flattered to know that he had some competition, making a comment with the word "sexual" in it and then giving her a "birthday" hug, and taking actions against her which could reasonably be viewed as retaliatory when she was not responsive. That Dr. Pathak views this as mere cultural differences and not sexual harassment is beside the point. The independent reviewers had ample basis for their decision, regardless of the alleged bias of Director Sims.

The same evidence means that Pathak would lose on the merits of the summary judgment motion.

## IV.

Accordingly, we vacate the district court's judgment and remand for a dismissal for lack of subject matter jurisdiction.  Costs are awarded to the Department.