*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0087a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SUZANNE FLIGIEL, M.D.,

                    *Plaintiff-Appellant,*

     *v.*

MICHAEL K. SAMSON, M.D., et al.,

                    *Defendants,*

ANTHONY J. PRINCIPI, in his capacity as Secretary,
Department of Veterans Affairs,

                    *Defendant-Appellee.*

No. 04-1531

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-72512—Julian A. Cook, Jr., District Judge.

Argued: September 21, 2005

Decided and Filed: March 7, 2006

Before: DAUGHTREY, MOORE, and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Riyaz A. Kanji, KANJI & KATZEN, Ann Arbor, Michigan, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Riyaz A. Kanji, Jennifer B. Salvatore, KANJI & KATZEN, Ann Arbor, Michigan, Arthur Oleinick, Ann Arbor, Michigan, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

**AMENDED OPINION**

_____

    McKEAGUE, Circuit Judge. This is an appeal of the district court's refusal to set aside its grant of summary judgment to the Veterans Administration (VA) in a suit brought by a physician who was transferred to a VA facility without notice and an opportunity to respond, as required by statute and Veterans Administration agency regulations. The district court found that Dr. Suzanne Fligiel's transfer was a "major adverse action," entitling her to procedural protections, including advance notice and an opportunity to respond. However, the court held that the denial of procedural due process was harmless error and granted the VA summary judgment.

1

On appeal, Fligiel argues that the application of the harmless error test was inappropriate under *Wilson v. Social Security*, 378 F.3d 541 (6th Cir. 2004), and that the district court wrongly relied on information outside of the agency record in making its determination. It is unnecessary to address these claims on the merits, however, because we find that judicial review of this matter was precluded in the first instance. Therefore, we vacate the district court's grant of summary judgment to the VA, with remand to the district court for an entry of dismissal pursuant to *United States v. Fausto*, 484 U.S. 439 (1988).

# I.  BACKGROUND

## A.  Factual Background

Suzanne Fligiel M.D., began working for the John D. Dingall Veterans Administration Medical Center ("VAMC") in Detroit in 1985, and by 1992, she had advanced to the position of Chief of Pathology and Laboratory Medicine Services ("PALMS"). While serving as the Chief of PALMS, Fligiel was involved in various disputes with both her staff and her supervisors. Physicians working in her department complained that Fligiel had an overbearing managerial style, and several members of the staff complained to Fligiel's superiors. Fligiel was also resistant to the VAMC's new partnership with Wayne State University and the Detroit Medical Center, which caused concern with her supervisors and colleagues. Her official proficiency reports, however, were highly complimentary of her work with the department at least through 1995.

On October 20, 1999, Fligiel was called to a meeting with Dr. Samson, her supervisor at the VAMC. He informed her that she was being "detailed" to the PALMS department at the VAMC in Ann Arbor, Michigan, and that she was being reassigned from her position as Chief of PALMS to a staff physician position. The reassignment led to a net loss in Fligiel's annual salary of $13,400.00.

At the time of the detail, Samson told Fligiel that he was frustrated by her lack of cooperation with the partnership efforts and by the negative and hostile work climate that was the product of her management style. He advised her to report to personnel, and told her she would be escorted out of the building by the VA police. Fligiel did not report to personnel, and left the VAMC down a back stair case. She contacted her counsel immediately. On November 4, her attorneys sent a letter to the Detroit VAMC requesting all records relating to Fligiel's employment, as well as a copy of the VA grievance procedures. Shortly thereafter, Fligiel's counsel sent a letter to Dr. Thomas L. Garthwaite, Acting Under Secretary for Health and the Chief Medical Director of the Department of Veterans Affairs, requesting an appeal to the Disciplinary Appeals Board ("DAB"). Dr. Garthwaite responded via letter dated December 10, 1999, stating that Fligiel's proper recourse was through VA grievance procedures.

Fligiel received a memorandum dated January 4, 2000, that rescinded her reassignment from her position as Chief, though this did not change the amount of her salary. Several days later, Fligiel's counsel received a letter from the Department of Veterans Affairs counsel stating that Fligiel's only option for redress was through the Equal Employment Opportunity Commission.

In October 2001, Fligiel received notice that she was being permanently reassigned to a staff physician position in Saginaw, Michigan. Fligiel accepted this transfer, but she filed a formal complaint with the VA's Office of Resolution Management. Fligiel received a response regarding her administrative grievance in February 2002, informing her that the reassignment was in compliance with VA regulations.

## B.  Procedural Background

In June 2000, Fligiel sued Michael K. Samson, M.D., (Chief of Staff at the Detroit VAMC), Thomas L. Garthwaite, M.D., (Deputy Under Secretary for Health, Department of Veterans Affairs), Togo D. West, Jr., (Secretary of Veterans Affairs), and the Department of Veterans Affairs in federal district court.  The complaint sought damages for violations of 38 U.S.C. §§ 7461-7464 (Veterans' Benefits, Disciplinary and Grievance Procedures), and for a *Bivens* claim based on a Fifth Amendment violation.  With regard to the § 7461 argument, Fligiel asserted that her transfer to the Ann Arbor VAMC amounted to a major adverse action, entitling her to statutory procedural protections.  The defendants filed a motion to dismiss or, alternatively, for judgment on the pleadings on September 5, 2000, arguing that the district court lacked jurisdiction under the APA and under 38 U.S.C. § 7461 *et seq.*; that the *Bivens* claim was prohibited under *Bush v. Lucas*, 462 U.S. 367 (1983), and that the claims were barred on both sovereign and qualified immunity grounds.

Fligiel filed for partial summary judgment on September 29, 2000, and on October 10, 2000, she filed an amended complaint that added an additional claim for sex discrimination under Title VII.  On January 31, 2001, the district court entered an order granting the defendant's request for summary judgment, finding that the detail did not constitute a major adverse action so that Fligiel was not entitled to a hearing before the DAB, that the *Bivens* claim was barred, and the constitutional claim was invalid on the basis of the sovereign immunity of Samson, Garthwaite, and West, and the qualified immunity of Samson.

Fligiel filed two additional amended complaints:  the first of these added a claim that the Saginaw transfer was retaliation for the prior complaint of sex discrimination, and the second added a claim that the transfer to Saginaw was a major adverse action, and Fligiel was denied her statutory rights to notice and a hearing under 38 U.S.C. § 7462 and the APA.  On April 8, 2003, a verdict form was filed stating that Fligiel failed to prove the elements of sex discrimination with regard to the transfers to the Ann Arbor VAMC and the Saginaw VAMC.

In May 2003, Fligiel submitted a brief requesting that the court reverse the January 31, 2001, grant of summary judgment on the basis of the later trial testimony and exhibits.  In this brief, Fligiel argued that Dr. Samson's trial testimony made it clear that the personnel actions taken in her case amounted to a permanent transfer rather than a detail, and were based in part on professional conduct or competence.  The court entered an order on August 26, 2003, denying the request for a reversal of the earlier decision.  However, the court did set aside its earlier determination that the action taken against Fligiel was not a major adverse action, in light of the events occurring and evidence gathered since that earlier date.  The court found that Fligiel's relocation to the Ann Arbor VAMC was a major adverse action, but that this transfer was not based on professional conduct or competence.  Thus, Fligiel was still not entitled to a review by the DAB pursuant to 38 U.S.C. § 7462.  Fligiel filed a motion to amend the judgment, which the court denied. She then filed this appeal.

## II.  JURISDICTION AND STANDARD OF REVIEW

The district court claimed jurisdiction pursuant to 28 U.S.C. § 1331, relying on the Veterans' Benefits Act, 38 U.S.C. § 7461 *et seq*; and the Administrative Procedure Act , 5 U.S.C. § 701 *et seq*. Appeal to this court was made pursuant to 28 U.S.C. § 1291. However, after reviewing these statutes in light of applicable case law, we find that judicial review of this matter was precluded.

When this court is reviewing a district court's opinion as to an agency action, it will use a *de novo* standard of review.  *Steeltech, Ltd. v. EPA*, 273 F.3d 652, 655 (6th Cir. 2001).  The court will then apply the "appropriate standard of review" in looking at the agency's decision. *Steeltech*, 273 F.3d 652, 655.

### III.  STATUTORY PROCEDURAL RIGHTS

#### A.  Fligiel's Remedies under the Veterans' Benefits Act

Veterans Administration physicians[1] are afforded procedural protections when they experience a "major adverse action," as defined by 38 U.S.C. § 7461.  The statute identifies a "transfer" as such an action.  § 7461(c)(2)(B).  Initially, the district court agreed with the VA's description of Fligiel's relocation to the Ann Arbor VA as a "detail," an action that does not trigger any statutory protections.  However, after re-examining the issue, the court agreed with Fligiel that the relocation to the Ann Arbor VAMC was a transfer.

Under Title 38, the VA's procedure for addressing a major adverse action depends upon the findings of a two step analysis.  First, the action must be identified as a major adverse action within § 7461(c)(2)(B).  These include suspension, transfer, reduction in grade, reduction in basic pay, or discharge.  *Id*.  Next, the VA must determine whether the major adverse action was the result of "professional conduct or competence."  § 7461(c)(3).  Questions of professional conduct or competence are defined as those involving clinical competence or direct patient care.  § 7461(c)(3)(A)-(B).  The determination as to whether the major adverse action involved a question of professional conduct or competence is a pivotal one.  Adverse actions involving professional conduct or competence are governed by the procedures outlined in § 7462, while adverse actions that do not involve such a question are controlled by § 7463.

Fligiel's transfer to the Ann Arbor VAMC in October of 1999 was a major adverse action.  The district court found that she was transferred for reasons other than professional conduct or competence, invoking the protections of § 7463.  Under the statute, the employee is entitled to "(A) an advance written notice stating the specific reason for the proposed action, and (B) a reasonable time to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer."  § 7463(c)(2)(A)-(B).  Additionally, the statute provides for internal grievance procedures, including the "right to formal review by an impartial examiner" and a right to have the examiner's findings reviewed "by an official of a higher level than the official who decided upon the action."  § 7463(d)(1)-(3).  However, there is no right of judicial review afforded by the statute, and review to a Disciplinary Appeals Board ("DAB") is specifically foreclosed.  § 7463(a).

On appeal, Dr. Fligiel does not contest the district court's conclusion that she was transferred for reasons other than professional conduct or competence, nor does she deny that her statutory remedies under Title 38 do not include judicial review.  Dr. Fligiel relies instead on provisions of the APA to obtain judicial review.

#### B.  Fligiel's Remedies under the Administrative Procedure Act

The district court claimed jurisdiction relying on the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06.  Under the APA, an aggrieved party may seek judicial review of final agency action if there are no other adequate mechanisms for review, and review has not been foreclosed by statute or "committed to agency discretion by law."  5 U.S.C. § 701(a).  In determining whether review is available under the APA, we are mindful of the Supreme Court's admonition that we must be "wary of interpreting the APA in a manner that precludes any judicial review of agency decisions, requiring a 'showing of clear and convincing evidence' that Congress intended to eliminate judicial review in matters of agency discretion."  *UHI Inc. v. Thompson*, 250 F.3d 993, 996 (6th Cir. 2001) *citing Barlow v. Collins*, 397 U.S. 159, 167 (1970).

---

[1]38 U.S.C. § 7401 describes the  health care professionals appointed within the VA system entitled to receive the procedural protections described in 38 U.S.C. §§ 7461-64.

The Secretary argued that judicial review under the APA was improper because of the holdings in *United States v. Fausto*, 484 U.S. 439 (1988); and *Pathak v. Department of Veterans Affairs*, 274 F.3d 28 (1st Cir. 2001). However, the district court found these cases inapposite to the facts here. Instead, the court claimed jurisdiction, and found that the VA's procedural lapse was harmless error. We disagree with the district court in these determinations, and find that both *Fausto* and *Pathak* are on point. Further, we have denied judicial review in reliance on *Fausto* in similar circumstances. *See Leistiko v. Stone*, 134 F.3d 817 (6th Cir.1998), *and Harper v. Frank*, 985 F.2d 285 (6th Cir. 1993). We agree with the Secretary that Fligiel may not gain judicial review in reliance on the APA, because there is clear and convincing evidence that Congress precluded review for the type of harm she suffered.

In *United States v. Fausto*, 484 U.S. 439 (1988), the Supreme Court held that an employee governed by the Civil Service Reform Act ("CSRA") was foreclosed from invoking other statutory means of judicial review, because the CSRA is the comprehensive remedial scheme for such individuals. *Fausto*, 484 U.S. 439, 448-49. Fausto was an employee of the Fish and Wildlife Service, subject to the CSRA. *Fausto*, 484 U.S. 439, 442-43. After exhausting his administrative remedies, Fausto attempted to obtain judicial review of his adverse personnel action through the Back Pay Act, because the CSRA did not provide judicial review for the type of adverse action he suffered. *Fausto*, 484 U.S. 439, 447. The Court held that providing judicial review pursuant to an alternate statute would undermine the purpose of the CSRA; namely providing the comprehensive catalog of remedial measures for the employees regulated by the Act. *Fausto*, 484 U.S. 439, 448-50.

The Court ruled that Congress intended the CSRA to "replace the haphazard arrangements for administrative and judicial review of personnel action, part of the 'outdated patchwork of statutes and rules built up over almost a century' that was the civil service system." *Fausto*, 484 U.S. 439, 444 (citation omitted). Further, the court noted that Congress enacted the CSRA, "which replaced the patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Fausto*, 484 U.S. 439, 446. The Court reasoned that granting federal employees governed by the CSRA judicial review by invoking the protections of other federal statutes would undermine the comprehensive aim of the CSRA. *Id.*

Further, the court reasoned that the absence of a provision allowing judicial review of Fausto's adverse personnel action in the CSRA was an indication that Congress did not intend employees to have such a right. *Fausto*, 484 U.S. 439, 448-9. "It seems to us evident that the absence of provision for these employees to obtain judicial review is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that they should not have statutory entitlement to review for adverse action of the type governed by Chapter 75." *Id*.

Applying the holding in *Fausto* to the facts here, we find that Fligiel is precluded from invoking the protections of the APA to obtain the judicial review of her adverse employment action that she was denied by the Veterans' Benefits Act. Like the CSRA, Title 38 provides a comprehensive regulatory scheme for employees of the VA. In particular, § 7463 outlines the procedures Congress intended to provide for review of adverse actions of the type Fligiel encountered. Fligiel was entitled to "(A) an advance written notice stating the specific reason for the proposed action, and (B) a reasonable time to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer." § 7463(c)(2)(A)-(B). In

addition, internal grievance procedures were available.  § 7463 (d)(1)-(3).  However, there is no provision for judicial review conferred by § 7463, in contrast to § 7462.[2]

Fligiel's attempt to acquire judicial review relying on provisions of the APA is ill fated. Under *Fausto,* where a comprehensive remedial scheme exists to address agency adverse actions, and Congress has clearly indicated that no judicial review is available, an individual may not choose other federal statutory avenues to obtain review.  *Fausto*, 484 U.S. 439, 455.  "The CSRA established a comprehensive system for reviewing personnel action taken against federal employees. Its deliberate exclusion of employees in respondent's service category from the provisions establishing administrative and judicial review for personnel action of the sort at issue here prevents respondent from seeking review in the Claims Court under the Back Pay Act."  *Id*.  Like Fausto, Fligiel was entitled to specific procedural remedies under Title 38, which did not include judicial review.  She cannot now rely on  the procedural protections of the APA.

The First Circuit addressed this very issue in *Pathak v. Department of Veterans Affairs*, 274 F.3d 28 (1st Cir. 2001).  Pathak was a VA physician governed by  the provisions of the Veterans' Benefits Act.  *Id*.  Like Fligiel, Pathak was subject to a major adverse action not involving professional conduct or competence.  *Pathak*, 274 F.3d 28, 32.  He, too, was entitled to the statutory protections of 38 U.S.C. § 7463, which do not include judicial review.  Pathak attempted to use the APA to acquire judicial review of his adverse action.  *Id*.

In deciding whether Pathak was entitled to judicial review under the APA, the First Circuit stated:

> [I]t was Dr. Pathak's actions as an employee and as a supervisor that were at issue, not his clinical competence or direct patient care.  In contrast with § 7462, which provides judicial review of discipline based on professional conduct or competence, Congress provided no right of review in § 7463, which governs discipline unrelated to professional conduct or competence.  Congress's express provision of judicial review in § 7462, coupled with a complete omission of judicial review in § 7463- - the provision governing Pathak-- is "persuasive evidence that Congress deliberately intended to foreclose further review of such claims."

*Pathak v. Department of Veterans Affairs*, 274 F.3d 28, 32 (*citing United States v. Erika, Inc*., 456 U.S. 201, 208 (1982), *quoted in Fausto*, 484 U.S. 439, 448 (1988)).

We agree with the First Circuit's analysis.  Like Pathak,  Fligiel may not invoke the review provisions of the APA in order to obtain the judicial review Congress intended to deny her under § 7463.  We are careful to circumscribe this holding to situations such as this, where there is clear evidence that Congress did not intend to provide judicial review of agency action.  In fact, § 7463 specifically precludes review of a major adverse action by a Disciplinary Appeals Board (DAB) not arising from a question of professional conduct or competence.  § 7463(a).  Because a review by the DAB is the first step to judicial review under § 7462, Congress forestalled the review process by eliminating board review for the type of adverse actions addressed by § 7463.  It is clear that Congress wanted to limit judicial review to adverse actions only involving questions of professional conduct or competence.  Fligiel's transfer to the Ann Arbor VA was not such an adverse action, and she was not entitled to judicial review.

---

[2]38 U.S.C. § 7462 does provide for judicial review of an adverse agency action involving "professional conduct or competence."  It is apparent that Congress wanted to limit the availability of judicial review to well defined circumstances.  While the district court acknowledged that Fligiel suffered a major adverse action, it found the action did not arise out of a question of professional conduct or competence.  Therefore, Fligiel was not entitled to the procedural protections of § 7462, including judicial review.

This circuit has relied on *Fausto* to deny judicial review in other situations. In *Leistiko v. Stone*, 134 F.3d 817 (6th Cir. 1998), Leistiko was a lieutenant colonel in the National Guard and an "excepted service" federal employee governed by the CSRA. *Leistiko*, 134 F.3d 817, 818. He was terminated from his position as a Supervisory Aircraft Pilot by the Ohio Adjutant General's Department after he was medically disqualified from aviation service. *Id.* After unsuccessfully pursuing his administrative remedies, Leistiko filed suit in federal district court alleging violations of his rights under the APA.[3] *Id.* The district court dismissed the claim . *Id.* We affirmed, noting that under *Fausto,* the CSRA precluded judicial review of Leistiko's termination. *Leistiko* 134 F.3d 817, 820.

While Chapter 75 of the CSRA provided substantive and procedural rights for "removals", it expressly excluded individuals in Leistiko's employment category. *Id.* We found that this exclusion evinced clear congressional intent to deny these employees the protections, including judicial review. *Id.* "Because Col. Leistiko has thus been excluded from the protections of Chapter 75, the logic of *Fausto* is that his removal from the technicians position is not subject to judicial review." *Id.* Further, we acknowledged that the APA generally allows judicial review of final agency action when there is no other adequate remedy, *except* when other statues preclude this review. *Id.* Relying on *Fausto*, we found that the CSRA did preclude Leistiko's right of review under the APA. *Id.*[4]

Likewise, we find that the Veterans' Benefits Act effectively precludes judicial review for Fligiel. The Act's express exclusion of DAB review in 38 U.S.C. § 7463, and its inclusion of DAB review and subsequent judicial review in § 7462 clearly demonstrates congressional intent to limit review to the adverse actions governed by § 7463. Fligiel may not circumvent this limitation by invoking the judicial review provision of the APA.[5]

## IV.  CONCLUSION

For the aforementioned reasons, the judgment of the district court granting summary judgment to the Veterans Administration is VACATED, with REMAND to the court for an entry of DISMISSAL.

---

[3] Leistiko also alleged violations of his rights under the Constitution, the National Guard Technicians Act, the Rehabilitation Act and the Veterans Re-employment Rights Act. *Leistiko v. Stone*, 134 F.3d 817, 819 (6th Cir. 1998).

[4] *See also Harper v. Frank*, 985 F.2d 285 (6th Cir. 1993). In *Harper*, we held that a postal worker governed by the Postal Reorganization Act (PRA) had no right to administrative or judicial review for her claim that the postal service did not follow its own regulations when it denied her a promotion. Relying on *Fausto,* we held "[in] this case, we recognize the comprehensive scheme that Congress established in the PRA for addressing review of personnel matters for postal employees, and likewise, find 'no statutory entitlement to review' within the PRA." *Id.* at 290.

[5] On appeal, Fligiel challenged the denial of *statutory* due process. Therefore, we do not reach the issue of whether the preclusion of review extends to due process claims based on the United States Constitution.